## CLARK v. UNITED STATES.
### No. 434.

District Court, D. Maryland.

May 6, 1940.

John T. Koehler, of Baltimore, Md.
(David R. Owen and Semmes, Bowen &
Semmes, all of Baltimore, Md., on the
brief), for plaintiff.

Bernard J. Flynn, U. S. Atty., and G.
Randolph Aiken, Asst. U. S. Atty., both of
Baltimore, Md., and F. A. Michels, Sp.
Asst. Atty. Gen. (Samuel O. Clark, Jr.,
Asst. Atty. Gen., and Andrew D. Sharpe,
Sp. Asst. to Atty. Gen., on the brief), for
defendant.

CHESNUT, District Judge.

The question to be decided in this federal estate tax case is—when the executor exercises the option now given by statute to have the value of the "gross estate" determined as of the date *one year after* the decedent's death (instead of on the date of the decedent's death), must there be included in the valuation, in addition to the principal of the estate, also the income which has accrued thereon during the year after the decedent's death.

The case was tried upon a stipulation of facts which are hereby adopted by the court as findings of fact. Therefrom it appears that Sir Arthur Shirley Benn (sometimes known as Arthur Shirley, Baron Glenravel of Kensington), a subject and resident of Great Britain died in London, England, on June 13, 1937. He was not engaged in a trade or business in the United States, but died possessed of a substantial estate including about $200,000 market value of stocks and bonds held in this country. On January 19, 1938, the plaintiff in this case, Gaylord Lee Clark, qualified as the American executor of the decedent's estate. In the plaintiff's federal estate tax return filed with the Collector of Internal Revenue at Baltimore, Maryland, on September 6, 1938, he elected "to have the property included in the gross estate of this decedent valued in accordance with the method authorized by subdivision (j) of section 302 of the Revenue Act of 1926, as added by section 202 of the Revenue Act of 1935." The Commissioner of Internal Revenue finally determined that the es-

tate tax liability was $27,589.41 which was duly paid by the executor. The Commissioner required the inclusion in the gross estate of (a) interest that accrued at various times between the date of the death of the decedent and within one year after the date of his death amounting to $1,078.92 on bonds owned by the decedent on the date of his death; and (b) dividend payments declared and made at various times between the date of the death of the decedent and within one year after the date of his death, amounting to $18,250.36, on corporate stocks owned by the decedent at the date of his death. Of the latter amount of dividends, $12,460.29 represented dividends on stock of an American company which was paid wholly from current earnings of the company and no part thereof represented a distribution of earnings or surplus accumulated prior to the date of death. In the tax liability so computed in the amount of $27,589.41, $3,883.24 is the proportion of tax attributable to the inclusion in the gross estate of the income accrued thereon in the amount of $19,329.28, consisting of the above mentioned interest on bonds and dividends on stocks. The plaintiff duly filed a claim for refund of the said estate taxes in the amount of $3,883.24, which was wholly disallowed by the Commissioner on October 4, 1939, and this suit resulted. All income, estate and other federal taxes imposed upon or payable by the decedent or his estate have been paid.

The statutory option was first given to the executor by the Act of Congress of August 30, 1935, Ch. 829, § 202(a), 49 Stat. 1022.[1] The evident purpose was to give some partial relief from the burden of taxation of estate taxes in the case of sharply falling market prices between the date of death and a year thereafter. It was common knowledge that many large estates had been seriously embarrassed by the coincidence of heavy estate taxes and falling markets for securities during the period between the date of the decedent's death and the time when, in ordinary course of administration, the executor could reasonably realize upon the securities for the payment of taxes and other costs of administration. The period of a year was doubtless selected because that is a customary period allowed for administration and distribution by an executor. To meet this situation the statute provided in simple, nontechnical and apparently unambiguous language that—"If the executor so elects upon his return * * * the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date

---

[1] This statute as it now appears in the internal revenue code [26 U.S.C.A. § 811 (j)], reads as follows:

"Optional valuation. If the executor so elects upon his return (if filed within the time prescribed by law or prescribed by the Commissioner in pursuance of law), the value of the gross estate shall be determined by valuing *all the property included therein on the date of the decedent's death* as of the date one year after the decedent's death, except that (1) property included in the gross estate on the date of death and, within one year after the decedent's death, distributed by the executor (or, in the case of property included in the gross estate under subsection (c), (d), or (f) of this section, distributed by the trustee under the instrument of transfer), or sold, exchanged, or otherwise disposed of, shall be included at its value as of the time of such distribution, sale, exchange, or other disposition, whichever first occurs, instead of its value as of the date one year after the decedent's death, and (2) any interest or estate which is affected by mere lapse of time shall be included at its value as of the time of death (instead of the later date) with adjustment for any difference in its value as of the later date not due to mere lapse of time. No deduction under this subchapter of any item shall be allowed if allowance for such item is in effect given by the valuation under this subsection. Wherever in any other subsection or section of this chapter, reference is made to the value of property at the time of the decedent's death, such reference shall be deemed to refer to the value of such property used in determining the value of the gross estate. In case of an election made by the executor under this subsection, then for the purposes of the deduction under section 812 (d) or section 861 (a)(3), any bequest, legacy, devise, or transfer enumerated therein shall be valued as of the date of decedent's death, with adjustment for any difference in value (not due to mere lapse of time or the occurrence or nonoccurrence of a contingency) of the property as of the date one year after the decedent's death (substituting the date of sale or exchange in the case of property sold or exchanged during such one-year period)." (Italics supplied.)

one year after the decedent's death",[2] except that property previously sold or otherwise disposed of should be valued as of the time of such disposition.

It will be noted that the statute giving the option is made a subsection of section 811 of the internal revenue code which comprehensively prescribes what elements or items of property must be included in the gross estate, which is, unless the option is exercised, to be valued as of the time of the death of the decedent. The amending statute which gives the option to the executor relates only to the time as of which the valuation is to be made. There is no language in it which makes any change in the "property" which is to be valued. On the contrary it is clearly expressed that the property to be valued as of the date of one year after decedent's death, is the same property which by the prior paragraphs of section 811 was required to be included in the "gross estate" on the date of death. The question in the case is thus seen to be whether income accruing *from* the property during the year after the decedent's death is properly included in the "property" to be valued.

█ It is also to be noted that the statute giving the option as to the time of valuation is a change in only one condition of what had become over a period of years well settled law and practice with respect to federal income and estate taxes. Upon the death of a decedent his gross estate for purpose of federal estate taxation included (with other property) the fair market value of any securities held on the date of death, plus the then accrued amount of currently accruing fixed interest on unmatured obligations, such as coupon bonds, but not including dividends on stocks subsequently declared and paid. (Regulations 80, Art. 11, 1934 Ed., p. 25.) The nature of the tax

is an excise tax on the transmission of the property from the decedent to his heirs, legatees or distributees. Knowlton v. Moore, 178 U.S. 41, 49, 20 S.Ct. 747, 44 L. Ed. 969; New York Trust Co. v. Eisner, 256 U.S. 345, 41 S.Ct. 506, 65 L.Ed. 963, 16 A.L.R. 660; Young Men's Christian Ass'n v. Davis, 264 U.S. 47, 50, 44 S.Ct. 291, 68 L.Ed. 558; Tait v. Safe Deposit & Trust Co., 4 Cir., 70 F.2d 79, 81; Baer v. Milbourne, D.C.Md., 13 F.Supp. 998. The estate tax therefore does not reach any property not owned (or previously transferred) by the decedent at the time of his death, and income subsequently arising from the taxable corpus of the gross estate received by the decedent's beneficiaries is taxable to them as income. Int.Rev.Code, 26 U.S.C.A. § 162; Brewster v. Gage, 280 U.S. 327, 334, 50 S.Ct. 115, 74 L.Ed. 457; Sharp v. Commissioner, 3 Cir., 91 F.2d 802, reversed on another point 303 U.S. 624, 58 S.Ct. 748, 82 L.Ed. 1087.

The optional valuation statute became effective August 30, 1935. The Treasury Regulations then in force naturally made no requirement for the inclusion in the gross estate of any subsequently accruing income, and with respect to dividends stated that "Dividends on either common or preferred stock should be included only if declared prior to the decedent's death; * * *." The first change in the Regulations referring to the optional valuation statute was issued February 23, 1936.[3] This stated that "Regulations with respect to the foregoing provision, section 202 of the Revenue Act of 1935 will be promulgated at a later date." On September 25, 1936, more than a year after the statute became effective, the Treasury Department promulgated a new regulation purporting to interpret the optional valuation statute, which is now Regulation 80, Article XI.[4] Its text in applic-

---

2 It was also thereafter provided by Regulation 80, Art. 70, that the return might be filed within 15 months, instead of 12 months, to enable the executor to intelligently exercise the option.

3 See T.D. 4627 XV—1 C.B. 341, 344.

4 See T.D. 4699 XV—2 C.B. 293. Article XI is quite lengthy extending over four pages of printed matter. The principal portion thereof applicable to this case reads:

"*Art. 11. Optional Valuation date.*

"The property to be valued as of one year after the date of decedent's death, or as of date of decedent's death, or

as of some intermediate date, is the property included in the gross estate on the date of the decedent's death. As property and its value are separate and distinct, the former denoting legal rights, the latter the monetary measure of such rights, and as subdivision (j) treats of the two separately, it will be necessary in every case first to determine what property constituted the gross estate at decedent's death. Subdivisions of section 302, as amended, other than subdivision (j), supply the information necessary to that determination, subdivision (j) being, in the main, confined to the

able principal part is set out in the margin.

It, for the first time, required the income from the property accruing during the year to be included in the valuation at the end of the year.

 The Treasury Regulation, of course, is not effective or controlling if it is not consistent with the meaning of the statute and in effect by amendment of the statute *increases* the burden on the taxpayer. Koshland v. Helvering, 298 U.S. 441, 447, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L. R. 756; Miller v. United States, 294 U.S. 435, 439, 440, 55 S.Ct. 440, 79 L.Ed. 977; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528. Upon consideration of the statute and the regulation I reach the conclusion that the latter is invalid to the extent that it requires the income to be added to the principal for the valuation.

 *First:* It seems to be the theory of the regulation that the income to accrue on the principal in the future is a part of the "property" owned by the decedent at the time of his death. As applied to interest-bearing obligations, such as bonds and notes, the theory is applied in the form of a postulate that the obligation embodies two separate promises, one to pay the principal and the other to pay interest, both of which constituted a part of the "gross estate" at the time of the death of the decedent; and that while the promise to pay the principal may have depreciated in market value at the end of the year, the promise to pay the interest has increased in value by the lapse of time and has resulted in the actual payment or definite accrual of the interest, which then has a greater value than at the time of the decedent's death.

This is a possible analytical conception of the sum total of legal rights and obligations involved in the ordinary corporation bond, but it is far removed from the common understanding, which regards the bond and the annexed coupons as a financial entity, the market value of which is affected by the sum total of many factors, including importantly the security for the obligation, the interest rate payable thereon, the date of maturity of the principal, and the earning capacity and general financial condition of the debtor. It is utterly foreign to ordinary financial or legal practice to fix the market price of any ordinary bond or other interest-bearing obligation

date or dates as at which the value is to be ascertained.

"Interest-bearing obligations, such as bonds and notes, embody two promises, one to pay principal and the other to pay interest, and both promises are a part of the gross estate at the death of the decedent, if the obligation was then owned by him, or had been previously so transferred to him, or at his death there was vested in him any such right or power in or with respect to the obligation as to bring it within any of the other subdivisions of section 302, as amended. If the valuation date is that of decedent's death, the principal of the obligation and interest then accrued and unpaid thereon are to be valued as of that date. If the valuation date is subsequent to death, the principal and interest then accrued and unpaid are to be valued as of that date. The valuation date of any part payment of principal or of any installment of interest, made between decedent's death and the date as at which the obligation is to be valued, will be the date of such payment. Like rules will govern, so far as applicable, when any other obligation is involved, as, for example, one calling for the payment of rent or a royalty. Thus, in the case of rent, if the realty and the obligation to pay the rent reserved were parts of the gross estate at the time of decedent's death, the value of the former must be determined as of the applicable valuation date, and also the value of the rent then accrued and unpaid reserved by the latter. The valuation date of any rent paid in the interim pursuant to the rental obligation will be the date of its payment. * * *

"When corporate stock is a part of the gross estate at decedent's death, and a dividend in partial liquidation is thereafter paid on or before the date as of which the stock is to be valued, the valuation date of such dividend will be the date of its payment. Similarly, a dividend paid within the same period out of earnings, whether the earnings are made or accumulated prior or subsequent to decedent's death, will be valued as of the date of its payment. Earnings of the corporation neither declared as a dividend nor paid between decedent's death and the valuation date of the stock, will be reflected in the value of the stock. But a dividend declared prior to the valuation date of the stock and payable subsequent thereto will not be so selected if the stock is selling "ex-dividend" on such valuation date, but is to be valued as on that date."

on the analytical basis involved in the theory of the regulation, and there seems to be no persuasive reason in the language used in the statute or in the evident object to be accomplished by it to suppose that Congress intended the statute to be so applied. The property which is to be valued clearly must be that which was in existence at the date of the death of the decedent and was then properly included in the gross estate. Income from the property thereafter arising does not belong to the decedent at his death, and the right to the possession and enjoyment thereof which came into being after his death belong not to the decedent but to his successors in ownership. To impose the tax on subsequently accruing income is to put it on property belonging not to the decedent but to his successors. It seems a pure abstraction not based on economic realities to say that income received by beneficiaries of the decedent after his death was a part of his gross estate at the time of his death. The theory also runs counter to the very definite distinctions which are made by law and followed in practice with respect to income and estate taxation, because included in the gross estate is all fixed interest accrued up to the date of death, and all income thereafter accruing has always heretofore and now still is taxed under the income tax laws to the executor of the estate or the beneficiaries as income. And the view advanced by the regulation ignores the real nature of income, which is something arising and *severed from* the principal, and not a growth or an increment of value in the principal. Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; United States v. Phellis, 257 U.S. 156, 169, 42 S.Ct. 63, 66 L.Ed. 180; Helvering v. Bruun, 60 S.Ct. 631, 84 L.Ed. ——, March 25, 1940.

■ The theory of the regulation is quite inapplicable in the case of dividends on corporate stocks declared after the death of the decedent. They do not in any sense constitute "property" of the decedent. The uniform legal conception of dividends is definitely to the contrary. Gibbons v. Mahon, 136 U.S. 549, 558, 10 S.Ct. 1057, 34 L.Ed. 525; Geo. Feick & Sons v. Blair, 58 App.D.C. 168, 26 F.2d 540, 541; Green v. Philadelphia Inquirer Co., 329 Pa. 169, 196 A. 32; Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S.W. 91, 56 A.L.R. 1276; 13 Am.Jur.Corporations, s. 683, p. 686. In Heyn v. Fidelity Trust Co., 174 Md. 639, 654, 197 A. 292, 1 A.2d 83, 85, 739, it was said: "Dividends on the other hand do not accrue, or become due or payable until declared, 13 Am.Jur., Corporations, sec. 683, and until declared no relation of debtor and creditor arises between the stockholder and the corporation in respect to them, Ibid, for until declared they do not exist." And in Fletcher Cyc. Corporations, Vol. XI, p. 786, it is also said: "Prior to the declaration of a dividend, the right of a stockholder to a share of the earnings is not property * * *." In the instant case the fact is affirmatively shown that about two-thirds of the dividends paid on the stocks within the year were declared and paid from earnings of the corporation arising after the decedent's death; and there is no affirmative evidence to the contrary with respect to the remainder of the dividends included by the Commissioner in the gross estate. It was stipulated that all the dividends in the controversy were declared and paid after the decedent's death. The amount of the tax in dispute probably did not justify either of the parties to incur the expense necessary to obtain positive proof as to the nature of the dividends from the numerous stocks listed which amounted to only one-third of the dividends in controversy. As all were declared and paid after the date of death, it seems a fair inference that they were paid from current earnings thereafter, in the absence of any evidence to the contrary. Of course liquidating and true stock dividends stand on a different footing, because they are a distribution in part of capital; and would seem clearly enough to constitute a part of the principal of the estate owned by the decedent at his death. But this case does not involve any dividends of that nature.

There would seem to be still greater difficulties in applying the theory of the regulation to other forms of income from property; as, for instance, to the increase of a herd of cattle or other live stock, or crops on a farm sown and harvested during the year, or to rentals from real estate under leases made by the executor.

There are additional considerations which make strongly against the interpretation of the statute put forward by the regulation. If it had been intended to include accruing income it seems highly probable that the statute would have expressly said so, as the thought is one that would very naturally have occurred to the drafts-

man of the language. And if this had been the thought it seems highly probable that some positive provision would have been made for the deduction from the gross income of expenditures to create it, which are a quite customary incident of property other than stocks and bonds and may even occur with them in exceptional cases. It could hardly have been the intention to include in the valuation gross as distinguished from net income, and the absence of any provision for deductions from gross income to establish net seems to be a strong indication that the statute did not intend to include income in the valuation.

■ *Second*: The regulation is defended as a reasonable interpretation of an uncertain or ambiguously worded statute. In my opinion the statute is not ambiguous and, therefore, needs no interpretative regulation. If there were uncertainty of meaning in the language used it would be permissible to resort to the legislative history of the statute. Caminetti v. United States, 242 U.S. 470, 490, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.

1917B, 1168; Penn Mutual Life Ins. Co. v. Lederer, 252 U.S. 523, 527, 40 S.Ct. 397, 64 L.Ed. 698. When this is done the view is fortified that it was not the intention of the statute to include the net income in the valuation. The legislative history is quite lengthy but may be briefly summarized. For some years prior to 1935 efforts had been made to obtain some legislation to ameliorate the burden of estate taxation in the event of falling markets during the year after the death of the decedent. In the draft of the amendment adopted by the Senate in 1935 the legislation took the form of an allowable deduction for shrinkage in values during the year after death.[5] The House Bill proposed an inheritance tax instead of increased estate taxes, but carried a similar provision for deduction due to shrinkage in market values. When the Revenue Bill of 1935 went to Conference the Committee re-wrote the amendment in the language of its final enactment. The rather lengthy statement made by the House Managers with regard to the form of the Senate amendment as rewritten in the Conference is set out in the margin.[6]

---

[5] See Senate Report 1240 of the 74th Congress, 1st Session. See also statement of Mr. Harrison in the Congressional Record, Vol. 19, Part 12, p. 13043 and following. See also Hearings on the Revenue Act of 1935, Report of Senate Committee on Finance to accompany H. R. 8974, p. 9.

[6] "The amendment also allows an additional deduction in computing the value of the net estate, of the net shrinkage in value of assets arising from the difference in the aggregate value of assets forming part of the decedent's gross estate on the date of death and the aggregate value of such assets one year thereafter, substituting the date of sale or exchange by the executor in the case of assets sold or exchanged during such one year period. In lieu of this provision, the conference action inserts a provision giving the executor an election with respect to the time as of which the property included in the gross estate is to be valued. Under existing law the valuation is made as of the date of death. If the executor exercises the election given him by the conference agreement, all the property included in the estate on the date of death, is to be valued as of the date one year after the decedent's death, except that the value (at the time of distribution, sale, exchange or other distribution) of property distributed, sold, exchanged, or otherwise disposed of,

is taken in lieu of its value as of one year after death. Unless the decedent owns an interest or estate, the value of which is affected by mere lapse of time, the value used under the election is the value as of date of death adjusted for change in value not due merely to lapse of time. Deductions for loss from fire, other casualty, etc., and other deductions are disallowed if reflected in the latter valuation of the property. *. * * The operation of the new provision giving the executor the election may be shown by the following example:

" 'A decedent dies owning real estate of the value of $100,000; corporate stock of the value of $60,000; bonds of the value of $20,000; foreign government bonds maturing nine months after date of death of a face value of $10,000 but of a value of $9,550; and cash amounting to $5,000. These are values as of date of death. The gross estate at date of death amounts therefore to $194,550. The decedent had debts of $15,000 and the administration expenses were $25,000, which debts and expenses were promptly paid by the executor. The value of the net estate as of the date of death was, therefore, (after taking off the specific exemption) $114,550. Six months after the decedent's death the executor distributed bonds to legatees under the will, at which time they were worth $18,000, and he sold all the corporate stock owned

There is certainly nothing therein, or in the whole of the prior legislative history of the amendment so far as I have been able to discover, to indicate an intention to require the inclusion of income in the valuation. On the contrary, the report seems to be definitely inconsistent with any such idea. Thus, referring to the form of the Senate amendment, the report said: "The amendment also allows an additional deduction in computing the value of the net estate, of the net shrinkage in the value of assets arising from the difference in the aggregate value of the assets forming part of the decedent's gross estate on the date of death, and the aggregate value of *such assets* one year thereafter, * * *. In lieu of this provision, the conference action inserts a provision giving the executor an election with respect to the time as of which the *property included in the gross estate* is to be valued. Under the existing law the valuation is made as of the date of death. If the executor exercises the election given him by the conference agreement, all the property included in the estate *on the date of death,* is to be valued as of the date one year after the decedent's death, * * *." (Italics supplied.) The report closes by giving a concrete illustration of how the gross estate would be valued if the option is exercised. The items of property embraced in the illustration include real estate, stocks, domestic bonds and foreign bonds at their valuation of principal, and without any mention or account taken of income therefrom during the year. It seems highly improbable that the accrued income would have been omitted from the illustration if there had been an intention that it should be included. The commentators on the statute and the regulation have uniformly taken the view that the latter is invalid because inconsistent with the statute itself. 18 Chicago-Kent Law Rev. March 1940, pp. 150, 163; Montgomery Federal Taxes on Estates, Trusts and Gifts (1938-39 Ed.) p. 230; Hughes Federal Death Taxes (1938 Ed.) p. 310 note; Penna. Bar Ass'n. Quarterly, No. 34, pp. 100, 105; The Magazine "Taxes", March 1939, p. 147.

■ *Third:* The regulation is not a reasonable interpretation of the statute. It results in imposing both an estate tax and an income tax on the income accrued during the year, because in addition to the proper estate tax the executor must also pay an income tax on the income accruing during his administration. It is not suggested that the regulation is invalid because such double taxation would be unconstitutional; nor is it thought that Congress would not have had the power to impose the extra burden as a condition of the exercise of the option. But in the absence of language clearly imposing such a condition, it is not reasonable to interpret the statute as doing so (Nichols v. United States, 64 Ct.Cl. 241, 246; certiorari denied 277 U.S. 584, 48 S.Ct. 432, 72 L.Ed. 999), especially as it is a well established principle in the interpretation of tax statutes that a reasonable doubt is to be resolved in favor of the taxpayer. White v. Aronson, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. 20; Gould v. Gould, 245 U.S. 151, 38 S. Ct. 53, 62 L.Ed. 211; United States v. Merriam, 263 U.S. 179, 188, 44 S.Ct. 69, 68 L. Ed. 240, 29 A.L.R. 1547. In United States v. Supplee-Biddle Hardware Co. 265 U.S. 189, 195, 44 S.Ct. 546, 548, 68 L.Ed. 970, Chief Justice Taft said: "The result of the construction put by the government upon sections 233, 230 and 213 would be to impose a double tax on the proceeds of the two policies in this case over and above $40,000; i. e., an income tax and an estate tax. Such a duplication, even in an exigent war tax measure, is to be avoided, unless required by express words."

by the decedent for a fair market value of $50,000 in order to raise cash to pay the debts and expenses. The foreign bonds were paid in full at maturity. During the first year after the decedent's death the value of his real estate appreciated $5,000. The executor elects to take advantage of the new provision of the bill. The value will be arrived at in the following way:

*Assets*

| | |
|---|---|
| Real estate (as of one year after death) | $105,000.00 |
| Corporate stock (as of date of sale) | 50,000.00 |
| Bonds (as of date of distribution) | 18,000.00 |
| Foreign Bonds (as of date of maturity) | 10,000.00 |
| Cash | 5,000.00 |
| Gross Estate | $188,000.00 |

*Deductions*

| | | |
|---|---|---|
| Debts | $15,000.00 | |
| Administration expenses | 25,000.00 | |
| Specific exemption | 40,000.00 | 80,000.00 |
| Net estate | | $108,000.00'." |

See House Report No. 1885 on section 302j.

In this connection the recent case of Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, is instructive. In that case the court held that income received by an estate was improperly included in the valuation of the estate for the estate tax. The decedent was a member of a personal service partnership, without capital or tangible assets. The partnership agreement provided that in the event of the death of a partner the survivors should continue the business for one year thereafter, and the decedent's estate should share in the profits or losses to the same extent that the deceased partner would have done if living. Upon the death of the decedent his share of the undistributed earnings accrued to the date of his death was $24,124.20. This was included by the executor in the corpus of the estate for the estate tax. The surviving partners continued the business and paid to the decedent's estate $212,718.79 as its share of the profits of the business for the year after the decedent's death. The Commissioner required this additional amount to be included in the corpus of the estate, and the additional tax thereon ($41,- 517.45) was paid by the executor in 1921. The executor also filed an income tax return for the estate for that portion of the calendar year 1920 subsequent to the decedent's death, but did not include therein the additional profits from the partnership accruing after the decedent's death. The Commissioner, however, required the amount paid to the estate during the calendar year ($200,117.09) to be included in the income and the tax thereon ($55,166.49) was paid and a petition for refund denied. In the ensuing suit the executor sought to recover, in the alternative, either the amount of the income tax required to be paid on the additional income ($200,117.09) or the estate tax paid on the amount of $212,718.79 as a part of the corpus of the estate. That is to say, the executor contended that the same moneys could not properly be assessed and taxed both as corpus and as income. The Supreme Court determined that the item of $24,124.20 was properly included in the corpus; and that the item of $200,117.09 was properly taxed as income; but that the estate tax exacted on the income of $212,718.79 was erroneous and could be recovered by way of recoupment in the income tax suit despite limitations. The government contended that any recoupment was barred both on the merits and by limitations. What the Court, speaking by Mr. Justice Roberts, said, with regard to the government's contention on the merits is quite apposite here (See 295 U.S. pages 255, 256, 55 S.Ct. page 697, 79 L.Ed. 1421):

"On the merits it is insisted that the government was entitled to both estate tax and income tax in virtue of the right conferred on the estate by the partnership agreement and the fruits of it. The position is that, as the contract gave Bull [the decedent] a valuable right which passed to his estate at his death, the Commissioner correctly included it for estate tax. And the propriety of treating the share of profits paid to the estate as income is said to be equally clear. * * * We are told that since the right to profits is distinct from the profits actually collected we cannot now say more than that perhaps the Commissioner put too high a value on the contract right when he valued it as equal to the amount of profits received—$212,718.99. * * * The Commissioner assessed estate tax on the total obtained by adding $24,124.20, the decedent's share of profits earned prior to his death, and $212,718.79, the estate's share of profits earned thereafter. He treated the two items as of like quality, considered them both as capital or corpus; and viewed neither as the measure of value of a right passing from the decedent at death. * * * In the light of the facts it would not have been permissible to place a value of $212,718.99 or any other value on the mere right of continuance of the partnership relation enuring to Bull's estate. Had he lived, his share of profits would have become income. By the terms of the agreement his estate was to sustain precisely the same *status quoad* the firm as he had, in respect of profit and losses. Since the partners contributed no capital and owned no tangible property connected with the business, there is no justification for characterizing the right of a living partner to his share of earnings as part of his capital; and if the right was not capital to him, it could not be such to his estate."

▉▉ It is urged that the statute should be interpreted to provide in effect that an executor may assume, if he so elects, that the decedent had died one year later than he actually did, and that the estate tax should thus be levied as if the event upon which it is dependent had also happened at the later date; and consistently therewith everything then found in the estate at the end of the year after death should be in-

cluded even though part of it originally may have been income. This is indeed the effect of the regulation; but the clear answer to the contention is found in the language of the statute itself which limits the property to be valued to that properly included in the gross estate on the date of the decedent's death. Again it is suggested that as the optional valuation must take account of any capital gains, on some items of property, as compared with the market prices thereof at the date of death, it is equally reasonable to include the accrued income during the same period. This view also does not give due effect to the words of the statute. *All* the property in the estate at the time of death must be valued either as of that date or one year thereafter; and there is but one date for the valuation of all. *What* is to be valued is the corpus of the estate at the date of death, and this includes both principal and *then* accrued income, but not *future* income.

It is also argued that the regulation should be held valid on the authority of such cases as United States v. Hermanos y Compania, 209 U.S. 337, 339, 28 S.Ct. 532, 52 L.Ed. 821; McCaughn v. Hershey Choc. Co., 283 U.S. 488, 492, 51 S.Ct. 510, 75 L.Ed. 1183, and Murphy Oil Co. v. Burnet, 287 U.S. 299, 307, 53 S.Ct. 161, 77 L. Ed. 318, which hold that the reenactment by Congress without change of a statute which had previously received long continued executive construction, or a repeated reenactment of a tax provision under which treasury regulations had been adopted for its enforcement, must be regarded as very persuasive of the validity of the regulation. But this now well established doctrine is not properly applicable to the instant situation. Here the regulation is a comparatively recent one and the only reenactment of the 1935 statute is its inclusion in the comprehensive rearranged internal revenue code; and "where the law is plain the subsequent re-enactment of a statute does not constitute adoption of its administrative construction." Biddle v. Commissioner, 302 U.S. 573, 582, 58 S.Ct. 379, 383, 82 L.Ed. 431; Koshland v. Helvering, 298 U.S. 441, 446, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756.

It is said by counsel that there are numerous cases involving this same question, but so far only one has been decided. Saks v. Higgins, D.C., 29 F.Supp. 996, where the district court held the regulation valid and enforceable; and on appeal to the Second Circuit Court of Appeals, the ruling was affirmed, 111 F.2d 78; one Circuit Judge dissenting. I have of course very carefully studied all three opinions in that case. I have such high regard for the authority of the court of the Second Circuit and its several judges that I would with confidence follow the decision of the majority of the court in this case if my own examination of the question had not very definitely convinced me to the contrary, in accord with the dissenting opinion of Circuit Judge Chase. Moreover there are some differences between that case and this. The former was disposed of on the pleadings without evidence as to the nature of the dividends; while here there is affirmative proof by stipulation that two-thirds of the dividends were earned, declared and paid after the death of the decedent. This is an important if not wholly controlling difference on the facts of the case as to the dividends, and much increases the difficulty of applying the theory of the regulation to them. This difficulty was recognized in the Saks case, but not given controlling effect under the situation there presented. I do not find in the majority opinion in that case a discussion of the legislative history of the statute which seems to be important if the language is considered ambiguous.

In accordance with the views herein expressed, I have granted the plaintiff's motion for judgment in the amount of $3,883.24, together with interest thereon in accordance with the applicable statute.