**SAKS et al. v. HIGGINS, Collector of Internal Revenue.**

No. 283.

Circuit Court of Appeals, Second Circuit.

April 8, 1940.

CHASE, Circuit Judge, dissenting.

Maass & Davidson, of New York City (Herbert H. Maass and David J. Levy, both of New York City, of counsel), for appellants.

John T. Cahill, U. S. Atty., of New York City (David McKibbin, III, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Rollin Browne, James D. Ouchterloney, and George Craven, all of New York City (Mitchell, Taylor, Capron & Marsh and Cravath, de Gersdorff, Swaine & Wood, all of New York City, Gaston, Snow, Hunt, Rice & Boyd, of Boston, Mass., and Johnson & Thomas, Leon Lauterstein, Satterlee & Green, Shearman & Sterling, and Spence, Windels, Walser, Hotchkiss & Angell, all of New York City, of counsel), amici curiae.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

The only question involved in this appeal is the validity of Article 11 of Treasury Regulations 80, implementing § 202(a) of the Revenue Act of 1935, 26 U.S.C.A.Int. Rev.Code § 811(j). The plaintiffs are executors, and in accordance with the privilege granted by § 202(a), they chose to value their testatrix's estate as of August 30, 1937, the first anniversary of her death. The case comes to us upon a judgment dismissing the complaint for insufficiency, which described the property erroneously taxed, merely as an income of "rents, dividends and interest", received by them within the year following their testatrix's death. The Commissioner added this income to the gross estate and assessed the plaintiffs accordingly; they paid the whole tax, and are now suing to recover so much as was levied upon the addition. The question is whether the regulation was valid in treating income, subsequently received, as part of "the property included" in the gross estate "on the date of the decedent's death."

The answer is not necessarily the same for all kinds of income. For example, an interest bearing bond is a series of promises to pay installments of money in the future. Part of these we call interest because we are accustomed to regard them as consideration for the obligee's forbearance; the rest we call principal because they restore the original sum advanced. They are separate obligations— so far separate, indeed, that the obligee may bring successive actions upon them— but for convenience we group them together as a single piece or property, and they pass from hand to hand as such. The value of the bond is the aggregate value of all, each promise being discounted for the interval before its performance is due as well as for any doubts of the obligor's

responsibility; and it follows that if the holder of such a bond dies, and some of the promises fall due within a year, the aggregate will be pro tanto the smaller. If we appraise them then, we shall be appraising less "property" than the holder possessed at death. This would at once be admitted as to part payments of principal, and interest is no different. It is payable, regardless of what the loan may have earned for the borrower; and although to the lender the payments may appear to be the produce of his principal, it is not so; he gets it not because anything comes out of the money lent, but merely because a future dollar payable by another is less desirable than a present dollar in hand. His right to interest dates from the beginning. Similarly, in the case of any other series of promises, like a lease, the performance of any one or more of them actually changes the original property, even though we continue to speak of the whole series as though it were the same. Indeed, since the series does not include any promise to repay principal, a lease is ever more plainly a wasting piece of property. For these reasons we think that as to all transactions of this kind it was permissible to read the word, "property", in § 202(a) distributively; that is, as referring to an aggregate of obligations which changes with time. When a statute is open to fair differences of construction an administrative interpretation is often highly persuasive. Koshland v. Helvering, 298 U.S. 441, 446, 56 S.Ct. 767, 80 L.Ed. 1268; 105 A.L.R. 756; Armstrong Co. v. Nu-Enamel Corp., 305 U.S. 315, 329, 330, 331, 59 S.Ct. 191, 83 L.Ed. 195; Bowen v. Johnston, 306 U.S. 19, 29, 30, 59 S.Ct. 442, 83 L.Ed. 455; Lynch v. Tilden Co., 265 U.S. 315, 322, 331, 44 S.Ct. 488, 68 L.Ed. 1034; United States v. Johnston, 124 U.S. 236, 253, 8 S.Ct. 446, 31 L. Ed. 389.

The case is, however, otherwise as to dividends. Strictly we should not speak of these as separable from their shares until, by being declared, they become a debt of the company. For this reason, although what we have just said about interest applies truly enough to dividends already declared at the time of the decedent's death, a strong argument can be made for holding that as to others the regulation exceeded the statute. The reasons which here lead us to a contrary conclusion are three: first, it will generally be true that dividends declared within the year have been in part

accumulated at the beginning of the year; second, it is not likely that Congress should have meant to distinguish between dividends and interest, rents and the like; and third, the general purpose of the section seems to favor the Commissioner's interpretation. As for the first, while it is true that shareholders have no right to accumulated earnings until they are declared, except as they may insist upon the exercise of an honest judgment by their directors, it is equally true that collectively they are the beneficial owners of earnings, as of the other corporate assets. It would certainly not be unreasonable to suppose that Congress might look upon shares which should be valued at the end of a year as separable from earnings already accumulated at the beginning. True, this would not go the whole length of the regulation, which made no distinction between dividends declared from accumulated earnings and others. Nevertheless, it is a consideration not without its weight, for the result of the plaintiff's construction is to allow accumulated earnings to escape taxation, except insofar as there may chance to be equal accumulations a year later.

This consideration would, however, scarcely have been enough, had the statute applied only to shares; in fact it covered all kinds of property. It may be that, even so, the regulation included too much; we own it is a little hard to see how unplanted crops or unconceived offspring can be said to be part of the land or of the livestock of which a decedent dies possessed. But we are dealing with the income from investments, and the regulation need be valid only so far; and we think it unlikely that Congress should have distinguished between the different kinds of income from investments, especially as even that kind which by hypothesis is to be excepted (dividends) is itself subject to internal division between accumulated and unaccumulated earnings. Practically, investors do not think of the income from their securities as differing, because they have separately enforceable rights in the case of debts, leases, etc., and none in the case of shares of stock; they think of all as interchangeable income from investments. That does not of course determine on which side such income as a whole should fall (that is, whether it should all be treated as separable or as inseparable) but it does demand that a single disposition should be made of it; and the statute was not so plain as to forbid deciding for separability, whatever might have been the result, if shares of stock had alone been concerned.

Finally, the apparent purpose of the statute fortifies our conclusion. The hardship which Congress meant to relieve was that, due to the inevitable delays of administration, legatees did not have a chance to realize the values at death from the securities of the estate, either for the payment of taxes, or for any other purpose. The actual values at that time were therefore illusory, and it was thought unfair to assess them upon what for them did not really exist. They were therefore allowed to substitute other values which they could in fact realize; the estate was to be taxed at what it was worth when it really became accessible. Surely that included not only the securities as they stood at the end of the year, but the income they had produced meanwhile. The plaintiffs wish, however, not only to disregard the inaccessible values, but a part of the accessible; and this they do through the fiction of relating back the values at the end of the year to its beginning, when they did not represent the value of anything whatever. There is not the least reason to suppose that Congress intended to give them that relief; nor does justice demand it. If they are not to be assessed upon what is practically beyond their reach, they should certainly be compelled to accept in its stead the total of what is practically within it. It is quite idle to invoke the presumption against double taxation; the privilege is an option; if the taxpayers wish not to be subject to both estate and income taxes, they may always escape by accepting an assessment as of the time of death.

Judgment affirmed.

CHASE, Circuit Judge (dissenting).

As Sec. 202(a) of the Revenue Act of 1935, 26 U.S.C.A.Int.Rev.Code, § 811(j), but gave to executors an option, it is plain enough that Congress might impose such conditions upon its exercise as it saw fit.

But if Congress did intend to do what Art. 11 of T.R. 80 provides, and the majority has held the statute means, it chose a strange way to do it. Had that been the intention of Congress, it would have been easy to have said in plain words that that was one of the conditions attached to the option given. Because it did not do so but on the contrary simply provided that an

executor might have the property in the estate at death valued as of a year later instead of taking the valuation as of the date of death, I think the ordinary distinction which is recognized throughout the income and estate taxing statutes between what is usually regarded as income as distinguished from principal was intended to be maintained. It follows that I cannot accept the abstract reasoning of the regulation which the majority opinion approves as a permissible interpretation of a statute relating to taxation where the ordinary meaning of the language used is to be given effect.

Though intangibles are only one form of property involved, they will serve well enough for the purposes of illustration. They are, within common knowledge, bought and sold at prices which vary with the amount of accrued interest at the date of sale but not with interest to accrue in the future and it would probably seem strange to most such sellers or purchasers to have the principal and the so-called right to wholly unearned future interest valued separately as property. Unearned income from intangibles is generally treated as nothing but an expectancy which is merely an incident of the ownership of the intangibles themselves. Where there is an express promise to pay stated amounts of interest at stated times in the future there is always the express or implied understanding that the payment is compensation for withholding the principal from the owner for the time stated. When a bond, for instance, is valued as of any date, the rate of interest it bears is an important consideration. But if the concept of valuation now approved is right, then every bond alike in every respect except the interest rate would be worth the same amount at any given time regardless of the interest rate and any variation in the price attributable to a differing earning power by way of interest would be reflected in a separate valuation of the right to receive interest to accrue in the future apart from the bond itself. The difficulty in respect to ordinary stock and the dividends which may or may not be declared seems even greater.

I do not suggest that such concepts of property are impossible but only that they are so unusual that they are too much to load upon the language of this statute. To make them even approach the realm of practical economic reality in which taxation is to be kept and prevent unwarranted extension of a statute like this by implication, see United States v. Merriam, 263 U.S. 179, 187, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547, one would have to believe that it was both feasible and customary in a business sense to purchase and sell the so-called property consisting of the right to receive in the future unearned interest or income from intangibles as something separate and distinct from the ownership of the intangibles themselves. And, what is of even greater significance, it would also be necessary to believe that Congress meant to legislate on such a basis, rather than to say in simple words that, if the option offered was exercised, the estate income received by the executor during the year must be treated as though he had sold or otherwise disposed of property of a value equal to the amount of income received. And finally one must believe that Congress, without actually saying so, did intend to exact a price for the option made up in part by increasing the gross estate to the extent of gross income received during the year and to tax as property at the date of death not only the net income received but in effect the expense of getting it as well. I think Art. 11 of T. R. 80 goes beyond a fair and reasonable interpretation of the statute and that it is consequently invalid. Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528.