## MAASS, EXECUTOR, v. HIGGINS, COLLECTOR OF INTERNAL REVENUE.*

No. 274. Argued February 3, 1941.—Decided March 3, 1941.

*Mr. Homer S. Cummings* argued the cause, and *Messrs. Wilbur C. Davidson, Herbert H. Maass, David J. Levy,* and *Melville F. Weston* were on the brief, for petitioner in No. 274. *Mr. Rollin Browne,* with whom *Messrs. James D. Ouchterloney* and *George Craven* were on the brief, for petitioners in Nos. 510 and 511.

*Together with No. 510, *Estate of Abendroth et al.* v. *Commissioner of Internal Revenue,* and No. 511, *Estate of Blacque et al.* v. *Commissioner of Internal Revenue,* also on writs of certiorari, 311 U. S. 641, to the Circuit Court of Appeals for the Second Circuit.

*Mr. Richard H. Demuth,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Harry Marselli* were on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

In these cases we must decide whether, where an executor avails himself of the option extended by the estate tax law to value a decedent's gross estate as of one year after the decedent's death, rents, dividends, and interest received and accrued during the year are to be added to the value of the property to which they are attributable and included in the value of the gross estate. The question arises under § 302 (j) of the Revenue Act of 1926 as added by § 202 (a) of the Revenue Act of 1935.[1]

No. 274 is a suit against the Collector to recover an overpayment of tax. The complaint alleged that the decedent died August 30, 1936; that in the estate's return the executors elected to have the value of the gross

---

[1] The subsection has now been embodied in the Internal Revenue Code as § 811 (j), 53 Stat. 122, 26 U. S. C. 811 (j), and is in part as follows:

*"Optional valuation.* If the executor so elects upon his return . . ., the value of the gross estate shall be determined by valuing all the property included therein on the date of the decedent's death as of the date one year after the decedent's death, except that (1) property included in the gross estate on the date of death and, within one year after the decedent's death, distributed . . . or sold, exchanged, or otherwise disposed of, shall be included at its value as of the time of such distribution, sale, exchange, or other disposition, whichever first occurs, instead of its value as of the date one year after the decedent's death, and (2) any interest or estate which is affected by mere lapse of time shall be included at its value as of the time of death (instead of the later date) with adjustment for any difference in its value as of the later date not due to mere lapse of time. . . ."

estate determined by valuing it as of one year after the decedent's death; that the Commissioner included in the estate a sum which was not in fact the decedent's property at the time of her death but represented income, namely, rents, dividends, and interest earned by the estate subsequent to the decedent's death; that the executors paid the tax and their claim for refund was rejected. The Collector's answer raised no material issue of fact. Each party moved for judgment on the pleadings. The court dismissed the complaint.[2] The Circuit Court of Appeals affirmed, one judge dissenting.[3]

In Nos. 510 and 511, the executor of two decedents who died respectively October 9, 1936, and April 3, 1937, elected in its returns to have the gross estates valued as of one year after death or as of date of disposition. In each case the executor collected interest and dividends upon bonds and stocks forming part of the estate at decedent's death. The sums so collected were not reckoned in fixing the values of the estates, except such portion of them as accrued prior to death. The Commissioner determined deficiencies due to the failure to return them. The Board of Tax Appeals affirmed his action [4] and the Circuit Court of Appeals affirmed the Board's decision.[5]

Although there was no conflict between decisions of Circuit Courts of Appeals,[6] we granted certiorari because of the importance of the question and the number of pending cases in which it is presented.

---

[2] 29 F. Supp. 996.

[3] 111 F. 2d 78.

[4] 41 B. T. A. 1178, four members dissenting.

[5] 114 F. 2d 1017.

[6] The District Court for Maryland has decided contrary to the Circuit Court of Appeals for the Second Circuit: *Clark* v. *United States,* 33 F. Supp. 216.

It is agreed that the purpose of subdivision (j) was to mitigate the hardship consequent upon shrinkage in the value of estates during the year following death. Congress enacted it in the light of the fact that, due to such shrinkages, many estates were almost obliterated by the necessity of paying a tax on the value of the assets at the date of decedent's death. About one year after the adoption of the subsection, the Treasury promulgated Art. 11 of Regulations 80 (1937 Ed.) in which it ruled that interest-bearing obligations, such as bonds, embodied two promises, one to pay principal, the other to pay interest, both a part of the gross estate if the obligation was owned by the decedent at his death. It further ruled that in the case of leased real estate two factors were to be considered, the value of the realty and the value of the covenant to pay rent. With respect to stocks, it ruled that the value of the stock and the value of the right to dividends thereon were separable and each constituted an element of value to the decedent. The regulation required that if, during the year subsequent to death, rents, royalties, interest, or dividends were received by the decedent's estate, such portion thereof as had not accrued, or was not attributable to a period, prior to death, should be returned in full and reckoned as part of the gross estate in any case where the executor elected, as permitted by subsection (j), to value the assets as of one year after the decedent's death or as of the date of disposition of any asset. In accordance with the regulation the deficiencies in the present cases were determined.

In the courts below, and before the Board of Tax Appeals, the Government contended that such items of income are in truth payments on account of principal and that, by such payments, the principal is reduced so that, when the capital asset is valued at the end of the period, its true value is not reflected unless there be

added the interest, dividend, or other like payment received by the estate in the interim. In this court, the argument takes a somewhat different form. Reference is made to the fact that, under the option granted, a capital asset is to be valued either at the expiration of the year or at the time of disposition and it is urged that, as respects interest, rent or dividends, a disposition occurs at the date of the receipt of the item. In either aspect the validity of the contention depends upon the theory that, for purposes of estate tax valuation, the asset consists of two elements,—one the right of ownership the other the right to receive the income. It is said that both of these elements enter into the valuation made as of the date of death and if, in the subsequent period, the latter emerges in the shape of a payment, that payment is to be attributable to the income right rather than to the right of ownership of the income producing property.

On the other hand, the petitioners insist that the Government's position is unreal and artificial; that it does not comport either with economic theory or business practice; and that the regulation is an unwarranted extension of the plain meaning of the statute and cannot, therefore, be sustained. We hold that the petitioners are right.

It is not denied that, in common understanding, rents, interest, and dividends are income. Under the revenue acts, if such items are collected by a decedent's estate, the executors are bound to return them and pay tax upon them as income. In the case of a living holder, such receipts are never treated as on account of principal. Nor does the promise to pay interest, rents or dividends either to a living owner of the asset or to his executor after death, which has not been legally separated from the asset of which it is an incident, have any mar-

ket value apart from the asset, or bear any invariable relation to the value of the capital asset.

It is true that a bond embodies two promises, one to pay the principal at maturity, the other to pay interest at intervals until maturity. And the promise to pay interest or rent, or the expectancy of dividends upon stock, the amount of such payments, the past and prospective regularity of the payments, and other elements bearing upon the expectation of the receipt of income affect the value of any income producing property. But these elements are not separately valued in appraising the worth of the asset at any given time. It is the uniform practice to value the asset as an entirety, taking into consideration all the elements that go to give it value in the market.

In the appraisal of a decedent's estate, rent or interest accrued to the date of death is properly treated as a capital asset. So also, on the sale of an interest-bearing security, it is the uniform practice to add to the value of the obligation, as such, accrued interest to the date of sale. Since the statute says that, at the option of the executor, a bond may be valued as of one year subsequent to decedent's death, the natural conclusion is that the usual method of valuation shall be pursued whichever date is selected. The method always adopted for valuation at death is the same used in fixing a sale price; that is, to take the market value of the bond and add accrued interest to the date of transfer, at the rate stipulated in the instrument. It is not believed that Congress, in providing for two dates of valuation, intended that a different method should be followed if one date were chosen rather than the other.

If Congress intended the result for which the Government contends, namely, that a different method of valuation should apply at the end of the one year period than that applicable as of the date of death, it would have

been a simple matter so to state. That Congress had no such intention seems clear from the report of the House Managers on the conference committee report on the bill which embodied the language in question.[7] There an example is given as to how the calculation of value should be made at the end of the year. In this example, appreciation and depreciation in the value of bonds, stocks, and other assets, during the year, are shown but dividends or interest received are not included.

As has been said, the view we take comports with standard business practice; whereas the theory advocated by the Government involves the attribution to interest payments of a quality derived from a refined separation of so-called rights inherent in the ownership of income-producing property. Conceding that the ownership of a bond involves both the right to receive principal and the right to receive income, it is a highly artificial concept that an interest payment is a disposition, *pro tanto,* of the latter right by the owner of the obligation. Moreover, while the Constitution does not forbid double taxation, the intent to impose it upon a given receipt is not presumed. We think that, if it had been intended, Congress unequivocally would have so declared.

*Judgments reversed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS are of the view that this question of statutory construction is peculiarly appropriate for administrative interpretation (see Paul, Studies in Federal Taxation (3d series) pp. 423–425) and accordingly that the judgments in these cases should be affirmed for the reasons stated in the opinion of the court below in No. 274, *Saks* v. *Higgins,* 111 F. 2d 78.

---

[7] H. R. 1885, 74th Cong., 1st Sess., pp. 10–11.