**DAVIDSON et al. v. UNITED STATES.**

**Civ. A. No. 1135.**

District Court, E. D. Wisconsin.

Dec. 30, 1944.

Wood, Warner, Tyrrell & Bruce, of Milwaukee, Wis., for plaintiffs.

Timothy T. Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., and Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and George J. Laikin, Sp. Assts. to Atty. Gen., for defendant.

DUFFY, District Judge.

This action is brought to recover $9,-966.44, plus interest, by reason of an alleged overpayment of the federal estate tax on the estate of William A. Davidson, deceased.

Mr. Davidson died April 21, 1937. On June 30, 1938, his executors filed a federal estate tax return with the collector of internal revenue, and to cover the tax liability disclosed thereby made a payment of $70,270.85.

Pursuant to the law and regulations then prevailing the executors elected to have the estate valued as of one year after the date of the deceased's death, rather than as of the date of death. Sec. 203(j) of the Revenue Act of 1926, as amended by Sec. 202 of the Revenue Act of 1935, 26 U.S. C.A. Int.Rev.Acts, page 804; Treasury Regulations 80 (1937 Ed.), Article 11. Pursuant to the regulations the executors included as part of the gross estate the sum of $53,469.57 which was the income earned by the estate during the year after deceased's death.

It is the claim of the executors that they are entitled to a refund of so much of the tax paid by them as is attributable to the inclusion in the gross estate of the income for one year after the death of Mr. Davidson; that such income was included in the return pursuant to a treasury regulation which the Supreme Court held to be invalid in Maass v. Higgins, 312 U.S. 443, 61 S. Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035, decided March 3, 1941. The government desires to retain this tax which was collected pursuant to an invalid treasury regulation and advances several contentions, only one of which needs to be considered here.

In line with normal procedure the return filed by the executors on June 30, 1938, was audited with the result that a "30-day letter," dated April 27, 1939, was sent to the executors proposing a tax deficiency of $65,535.08. This deficiency was afterwards reduced to $20,229.35 by a letter dated January 10, 1940. The executors continued to disagree with the amount of the proposed tax deficiency, and pursuant to their request the matter was referred to the Milwaukee Division of the Technical Staff of the Bureau of Internal Revenue. Further negotiations were then had with discussions being limited to six items. Finally in February, 1941, a proposed deficiency of $11,-375.44 was agreed upon. In such negotiations no mention was made by either side of the amount included in the gross estate for the first year's income. The attorney for the estate was unaware any question had been raised as to the validity of the regulation under which the tax on such income was included. The representatives of the bureau knew that a district court, Saks v. Higgins, 29 F.Supp. 996, and the Second Circuit Court of Appeals, 111 F.2d 78, had upheld said regulation and that a petition for certiorari had been granted by the Supreme Court, Maass v. Higgins, 311 U.S. 626, 61 S.Ct. 37, 85 L.Ed. 398.

On February 11, 1941, Mr. Nelson of the Milwaukee Technical Staff prepared Treasury Form 890 to put into effect the agreement he had reached with the attorney

for the estate. On February 14 one of the executors signed Form 890 and it was mailed to Nelson. The form provided that the executor "consents to the assessment and collection of a deficiency in estate tax in the sum of $11,375.44, together with interest thereon as provided by law." A typewritten paragraph followed, to wit: "This Waiver of Restrictions is subject to acceptance by or on behalf of the Commissioner of Internal Revenue, on the basis of the adjusted liability as hereinabove proposed, and is to take effect as such only from the date said adjusted liability is accepted by or on behalf of the Commissioner as a basis for closing the case, and if not thus accepted will have no force or effect." The proposal (Form 890), together with a memo from Nelson known as a supporting statement, and other papers were forwarded to Milton E. Carter who was the head of the Technical Staff in Chicago. On March 1, 1941, Carter on behalf of the Commissioner approved the settlement proposed on Form 890 by signing his name and title thereto under the word "Accepted." The files in the case were then returned to Nelson at Milwaukee and were received by him on March 3, the date the decision of the Supreme Court in Maass v. Higgins, supra, was announced. On March 4, Nelson wrote to the executors telling them that the proposal for settlement had been accepted by the commissioner upon the recommendation of the Technical Staff. A computation of the tax was enclosed. On March 14, 1941, the sum of $11,375.44 was paid by the executors to the Collector of Internal Revenue.

About a month after the payment of the deficiency tax the attorney for the executors became informed of the decision rendered by the Supreme Court on March 3, 1941, in Maass v. Higgins, supra. As the effect of that decision was that the income of $53,469.57 was not a part of the gross estate for tax purposes in the Davidson tax return, request was made on April 17, 1941, that the proposal be set aside, and that the tax attributable to the inclusion of such income be refunded. This request was refused by the head of the Chicago Division Technical Staff. On September 29, 1941, the executors filed claim for refund for that portion of the tax attributable to the income in the year following the date of the death of said deceased, and this claim was rejected by the Commissioner of Internal Revenue on October 20, 1941. He also rejected reconsideration on November 3, 1942, and the institution of this suit followed.

After issue was joined herein and while this action was awaiting trial, the following endorsement was placed on the original of the estate's proposal: "Approved, August 3, 1944, John A. Sullivan, Acting Secretary of the Treasury."

The proposal of the estate to pay the tax deficiency was admittedly an attempt to effect a compromise agreement pursuant to 26 U.S.C.A. Int.Rev.Code, § 3761(a). The statute prescribes: "The Commissioner, with the approval of the Secretary, or the Under Secretary of the Treasury, or of an Assistant Secretary of the Treasury, may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; * * *."

■ The approval of such compromise by either the Secretary, the Under Secretary of the Treasury, or an Assistant Secretary of the Treasury was necessary in order that the same be binding; and an unapproved compromise will not estop a taxpayer from the recovery of any portion of the tax to which he might otherwise be entitled. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379; Joyce v. Gentsch, 6 Cir., 141 F.2d 891, 895; Leach v. Nichols, 1 Cir., 1927, 23 F. 2d 275, 277; L. Loewy & Son, Inc. v. Commissioner of Internal Revenue, 2 Cir., 1929, 31 F.2d 652, 654.

■ The proposed compromise was merely an offer on the part of the estate until such time as it might be legally accepted. The executor had the right at any time prior to the required approval thereof to withdraw the offer. Revocation takes place when there is a communication by the offerer received before acceptance by the offeree which states that the offerer intends not to be bound by the proposed contract. 17 C.J.S., Contracts, § 50, p. 398.

■ The acceptance of the offer by the head of the Chicago Division Technical Staff was not sufficient under the statute. Likewise a purported acceptance by the Acting Secretary of the Treasury in August, 1944, more than three years after the request by the attorney for the executors that the offer be withdrawn, is ineffectual.

■ The request that the proposed compromise be set aside, the filing of the claim for refund, and the commencement of this

action were clearly sufficient to withdraw the offer which had not theretofore been legally accepted.

No facts or circumstances appear in the record to warrant the claim of estoppel as against the estate. Joyce v. Gentsch, supra, 141 F.2d 891 at pages 895, 896.

As the proposed compromise was withdrawn before it was legally accepted, the estate is entitled to have the tax computed on the basis of the elimination of $53,-469.57 from the gross estate as shown in the executor's return.