In re TINDLE'S ESTATE.

PENNSYLVANIA CO. FOR INSURANCES ON LIVES & GRANTING ANNUITIES v. UNITED STATES.

Civ. No. 3431.

District Court, E. D. Pennsylvania.

March 1, 1945.

Francis H. Bohlen, Jr., of Saul, Ewing, Remick & Harrison, all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to Atty. Gen., for defendant.

BARD, District Judge.

This is an action by the surviving executor of the estate of Charles W. Tindle, deceased, to recover a refund of federal estate taxes which it paid. I make the following special

### Findings of Fact:

1. The plaintiff is the surviving executor of the estate of Charles W. Tindle, deceased, who died February 15, 1937.

2. Belle McGill Tindle, the other executor of the estate, died July 24, 1941.

3. The plaintiff and Bell McGill Tindle, as executors of this estate, executed under oath an estate tax return, Form 706, for the estate, wherein they exercised the option granted by Section 302(j) of the Revenue Act of 1926 as amended by Section 202(a) of the Revenue Act of 1935, 26 U.S.C.A. Int.Rev.Code, § 811(j), to have the property included in the gross estate of the decedent valued as of one year after the decedent's death.

4. At the time the estate tax return in this case was filed on May 12, 1938, Article II, Reg. 80 (1937) of the Treasury Department and the instructions contained in Form 706 required executors exercising the option to include in the gross estate interest and dividends collected and accrued upon bonds and stocks between the date of the decedent's death and the optional valuation date.

5. As then required by Article II, Reg. 80 (1937) of the Treasury Department and by the instructions contained in Form 706, the plaintiff and Belle McGill Tindle, executors, included in Schedule B of the return as part of the value of the gross estate of the decedent, interest and dividends aggregating $31,219.56 collected and accrued upon stocks and bonds between the date of the decedent's death and the optional valuation date, and attached to Schedule B, as part of the return, a rider reading as follows:

"In this return the Executors elect to have the property included in the gross estate valued as of the date one year after the decedent's death, with the exceptions provided in Section 302(j), as enacted by Section 202(a) of the Revenue Act of 1935. Since the Regulations provide that in case of such election, the income received by the Executors, between the date of the decedent's death and the optional valuation date, shall be included, this return complies with that requirement but, in so doing, the Executors desire to state that such income is included only under protest.

"Not only is it clear from the text of the Act that such income, while subject to Income Tax, is not subject to Estate Tax, but this natural and obvious meaning of the Act was emphasized by the report of the Conference Committee which framed the provision in the question. The Managers on the part of the House, in their explanatory statement, set forth a schedule showing exactly how the Estate Tax should be computed in case the subsequent valuation date is elected and from this schedule it was clearly apparent that no income should be included.

"Therefore, the Executors respectfully request the Commissioner of Internal Revenue to reconsider the utterly unfounded Regulation in the light of these facts and to adjust the tax upon this decedent's estate accordingly."

6. Plaintiff and Belle McGill Tindle, as executors of the estate, duly filed the estate tax return, including the above rider as part thereof, with the Collector of Internal Revenue at Philadelphia on May 12, 1938, and simultaneously paid to the Collector the sum of $98,318.08.

7. The Office of the Internal Revenue Agent in Charge, Philadelphia Division, made an examination of the above mentioned estate tax return and proposed a deficiency of $394.68, which deficiency the plaintiff and Belle McGill Tindle, as executors of the estate, paid to the Collector of Internal Revenue at Philadelphia, Pennsylvania, on December 13, 1938, together with interest at $13.66, the total payment being $408.34.

8. On March 3, 1941, the Supreme Court of the United States in the case of Maass, Executor v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035, held where an executor elects under Section 302(j) of the Revenue Act of 1926 as

amended, to have the estate valued as of one year after death, rents, dividends and interest accrued and received between the time of death and the time of such valuation are not to be included as part of the value of the gross estate and that Article II, Reg. 80 (1937) of the Treasury Department to the contrary was invalid.

9. Treasury Decision 5047 which was duly approved on May 22, 1941, and was filed with the Division of the Federal Register on May 24, 1941, amended Article II, Reg. 80 (1937) so as to conform with the Maass decision.

10. On May 24, 1941, three years and twelve days after the date of payment, the plaintiff, on behalf of the estate of Charles W. Tindle, deceased, filed a formal claim for refund on Form 843 claiming refund of $6178.63 or such amount as was legally refundable. In this claim the plaintiff assigned the following reasons for the allowance thereof:

"In accordance with request for refund at time of filing of Federal Estate Tax return and payment of the tax (See Schedule B), and in compliance with Supreme Court decision Maass, Ex'r v. Higgins in re income subsequent to date of death."

11. Upon further audit of the estate tax return the following actions were taken by the Commissioner of Internal Revenue:

(a) The Commissioner found that there had been an overassessment of federal estate tax in the amount of $6178.93. This overassessment arose from the erroneous inclusion in the gross estate of dividends and interest aggregating $31,219.56 accrued subsequent to the date of death and of interest on the deficiency theretofore paid.

(b) The Commissioner refused to recognize as a valid claim for refund the rider attached to Schedule B of the estate tax return above quoted.

(c) The Commissioner treated the claim for refund filed May 24, 1941, as the only claim for refund filed and refused to hold that the claim for refund was amendatory to a valid claim for refund filed May 12, 1938.

(d) The Commissioner allowed a refund of $408.34; the amount paid as additional federal estate tax and interest within three years from the date of the filing of the amendatory claim for refund.

(e) The Commissioner refused to allow a refund of the remaining amount of $5770.59 together with interest and gave as his reason for such refusal that the balance of the admitted overassessment was barred from refund by Section 319(b) of the Revenue Act of 1926 as amended by Section 810(a) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 910, which provides that a claim for refund must be filed within three years from the date of the payment of the tax sought to be refunded.

### Discussion

The Commissioner's rejection of the plaintiff's claim for refund was made on the sole ground that the claim was not presented within the time prescribed by Congress and raises two questions:

1. Is the statute applicable to this claim Section 319(b) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev. Code, § 910, prescribing a three year limitation period, or Section 3228(a) of the Revised Statute, as amended, 26 U.S.C.A. Int.Rev.Code, § 3313, prescribing a four year limitation period?

2. Even if the former statute is the applicable one, does the rider attached by the executors to their return constitute an informal claim for refund which would have been timely and would be cured by the formal claim subsequently filed?

On the first question the Commissioner contends that Section 319(b) of the Revenue Act of 1926, as amended, is the applicable statute. The relevant portion of this section reads: "All claims for the refunding of the tax imposed by this subchapter alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax. * * *"

Plaintiff contends that the applicable section is Section 3228(a) of the Revised Statutes as amended, the relevant portion of which reads: "All claims for the refunding or crediting of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as otherwise provided by law in the case of income, war-profits, excess-profits, estate, and gift taxes, be presented to the Commissioner within four years next after the

payment of such tax, penalty, or sum. * * *"

Although there is no precedent on this question with respect to estate taxes, the decisions are uniform in actions for refunds of income, excess-profits and gift taxes that the specific limitation as to refund are applicable to claims for overpayment of such taxes, whereas the general statute, Section 3228(a) of the Revised Statutes, as amended, applies where the taxpayer was exempt from the tax assessed and paid. Huntley v. Southern Oregon Sales, Inc., 9 Cir., 102 F.2d 538; United States v. Lederer Terminal Warehouse Co., 6 Cir., 139 F.2d 679; Olsen v. United States, D.C., 32 F.Supp. 276; Godfrey v. United States,[1] C.C.H. Inheritance, Estate and Gift Tax Service, paragraph 417210.

The basis for the distinction was set forth by the court in the Lederer case, supra, as follows, at page 681 of 139 F.2d: "Congress evidently considered that less time would be required for the discovery of errors in tax returns resultant from miscalculations or mere overpayment than would be required to ascertain the erroneous or illegal nature of an assessment. Hence, the inference is logical that Congress intended to allow the taxpayer a longer time to determine whether he had been erroneously or illegally assessed than would be permitted him for the discovery of a mere overpayment of taxes, assessed and collected upon a correct or legal basis."

The Commissioner contends that these decisions are all unsound and should not be followed, but that in any event the plaintiff's claim in the present case is for an overpayment of the estate tax rather than for an amount assessed against him illegally and without authority, and hence they are inapplicable. It seems clear, however, that the refund sought is not for an "overpayment" in the sense used as the basis for the distinction drawn, merely because plaintiff admittedly owed and paid some estate tax. The refund was rather for a refund sought to be imposed as an estate tax, but held by the Supreme Court not to have been levied at all under the statute in question, and hence erroneously and illegally assessed. The reasoning of the Circuit Court of Appeals for the Sixth Circuit in the excerpt from its opinion quoted above clearly brings the present claim under the general statute, Section 3228(a) of the Revised Statutes as amended.

I am inclined to follow the unanimous authorities bearing on this question and to hold that plaintiff's claim for refund, filed within four years from the time of the payment of the tax, was timely and permits the present action. This conclusion makes unnecessary a consideration of whether the rider to the original return constitutes an informal claim for refund.

I make the following

## Conclusions of Law:

1. No basis estate tax under Title III of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Acts, page 224 et seq., nor additional estate tax under Title II of the Revenue Act of 1932, as amended, 26 U.S.C.A. Int.Rev.Code, § 935 et seq., was imposed upon the $31,219.56 of interest and dividends collected and accrued upon bonds and stocks between the date of decedent's death and the optional valuation date, included in the estate tax return in this case.

2. There was an illegal assessment in this case of which $5770.59 had not been refunded and arises solely out of the erroneous inclusion of interest and dividends in the estate tax return.

3. The unrefunded sum of $5770.59 represents alleged taxes which were erroneously and illegally assessed and collected and were never imposed as basis estate tax under Title III of the Revenue Act of 1936, as amended, as additional estate tax under Title II of the Revenue Act of 1932, as amended, or under any other Act of Congress.

4. Section 3228(a) of the Revised Statutes, as amended, governs the time within which plaintiff was permitted to file a claim for refund of the sum of $5770.59, and the claim for refund filed May 24, 1941, was a valid, sufficient and timely claim.

5. Judgment is hereby entered in favor of the plaintiff and against the defendant in the sum of $5770.59 with interest thereon from May 12, 1938.

---

[1] No opinion for publication.