GRUENDER, Circuit Judge,
dissenting.
The court concludes that the CRP payments to Morehouse were not taxable as self-employment income because the CRP payments constituted “rentals from real estate” under 26 U.S.C. § 1402(a)(1). Ante at 621. I respectfully disagree. I would follow the Sixth Circuit’s persuasive interpretation of “rentals from real estate” as ¡t relates to CRP payments, see Wuebker v Comm’r, 205 F.3d 897, 903-05 (6th Cir.2000), which accords with the Internal Revenue Service’s most recent explanation statutory phrase, see I.R.S. Notice 2006-108, 2006-2 C.B. 1118.
Morehouse makes two arguments to support his assertion that his CRP payments were not taxable as self-employment income. First, Morehouse argues that the CRP payments were not net earnings from self-employment under § 1402(a). Second, Morehouse contends that, even if the CRP payments were net earnings from self-employment, they nonetheless were excluded therefrom as rentals from real estate under § 1402(a)(1). The court’s reversal of the Tax Court’s judg *623 ment rests solely on this latter ground. Ante at 620-22. Because I agree with the Commissioner that the CRP payments to Morehouse constituted net earnings from self-employment and that the CRP payments were not rentals from real estate, I would affirm the Tax Court’s judgment.
The Internal Revenue Code imposes self-employment tax on the “net earnings from self-employment derived by an individual ... during any taxable year.” 26 U.S.C. §§ 1401(a), 1402(b). The term “net earnings from self-employment” is defined as “the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed.” § 1402(a). “The ‘derived from’ requirement necessitates a nexus between the income and the trade or business actually carried on by the taxpayer.” Bot v. Comm’r, 353 F.3d 595, 599 (8th Cir.2003). To carry on a trade or business, “the taxpayer must be involved in the activity with continuity and regularity and ... the taxpayer’s primary purpose for engaging in the activity must be for income or profit.” Comm’r v. Groetzinger, 480 U.S. 23, 35, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987). Treasury regulations further provide that a taxpayer’s trade or business “must be carried on by the individual, either personally or through agents or employees.” Treas. Reg. § 1.1402(a)-2(b). Consequently, the CRP payments to Morehouse were net earnings from self-employment if they were derived from a trade or business carried on by Morehouse or his agent, keeping in mind that “[t]he self-employment tax provisions are broadly construed to favor treatment of income as earnings from self-employment.” Bot, 353 F.3d at 599.
Morehouse contends that he did not carry on a trade or business because his activities with respect to his CRP contracts were neither continuous nor regular. Whether a taxpayer is engaged in a trade or business is a question, of fact that we review for clear error. Id. Morehouse’s personal activities with respect to his CRP contracts included enrolling his property in the CRP, making annual certifications that his property complied with the CRP, purchasing seeds for his property on two occasions and having them shipped to his property, seeking and receiving cost-sharing payments for seeding and weeding activities, choosing to participate in the emergency haying of his property on various occasions, and making several trips each year to check on his property. Morehouse also hired Wallace Redlin to perform the physical labor required by the CRP contracts, which the court recognizes could entail “significant ‘tilling, seeding, fertilizing, and weed control’ work.” Ante at 621. The Tax Court found, and Morehouse does not dispute, that Redlin was Morehouse’s agent, meaning that Redlin’s activities were attributable to Morehouse for purposes of determining whether Morehouse carried on a trade or business. See Treas. Reg. § 1.1402(a)—2(b); Bot, 353 F.3d at 601. In addition, Morehouse also represented to the government that he was an eligible person actively engaged in farming operations on eligible land, that he would provide all of the active personal management for the farming operation, and that he would hire all of the active personal labor needed in the farming operation. We previously have held taxpayers to their representations in determining whether they were carrying on a trade or business. See Bot, 353 F.3d at 601-02 (“Despite [the taxpayers’] assertion that they bought the units of participation as an investment, the program operated on the basis that they were producers or owners of the [goods] delivered under the program ... and that ... their agent [acted on their behalf]. The [taxpayers] should be held to their *624 representations.”)- Considering the continuing obligations and monitoring required by the CRP contracts, Morehouse and Redlin’s compliance activities, and Morehouse’s representations in placing his property in the CRP, it cannot be said that the Tax Court committed a clear error by finding that Morehouse’s activities were sufficiently continuous and regular to carry on a trade or business.[9] '
This brings me to the issue on which the court and I disagree: whether the CRP payments to Morehouse were rentals from real estate. If the CRP payments qualify as rentals from real estate, then they are excluded from Morehouse’s net earnings from self-employment. See 26 U.S.C. § 1402(a)(1). The court’s principal reason for finding that the CRP payments to Morehouse were rentals from real estate is Revenue Ruling 60-32, 1960-1 C.B. 23, in which the IRS analyzed whether payments to a landowner under a predecessor of the CRP were taxable as net earnings from self-employment. In this revenue ruling and another that followed it, the IRS defined rentals from real estate to include, as relevant here, payments to a landowner who does not operate a farm personally or through agents or employees. Id.; Rev. Rul. 65-149, 1965-1 C.B. 434. However, as the court notes, the IRS effectively abandoned this position in 2006 by issuing a proposed revenue ruling in which the IRS concluded that CRP payments to a non-farmer, like Morehouse, are not rentals from real estate. See I.R.S. Notice 2006-108, 2006-2 C.B. 1118. The IRS issued this proposed revenue ruling in response to, among other things, the Sixth Circuit’s opinion in Wuebker, id., which held that CRP payments to farmers did not constitute rentals from real estate, 205 F.3d at 903-04. In adopting Wuebker’s rationale and applying it to both farmers and non-farmers, the IRS recognized that this notice would render Revenue Ruling 60-32 obsolete. I.R.S. Notice 2006-108, 2006-2 C.B. 1118 (“Revenue Ruling 60-32 is obsoleted.”). Consequently, we are left to reconcile the IRS’s conflicting views.
The court resolves this conflict by “em-brac[ing]” the IRS’s interpretation from Revenue Ruling 60-32 and according no deference to Notice 2006-108. Ante at 621. Although I would grant limited deference to Notice 2006-108 as the IRS’s understanding . of § 1402(a)(1) in light of Wuebker, I agree with the court that our deference must be tempered by the IRS’s inconsistent views over time and by the IRS’s failure to adopt this notice as a formal revenue ruling. See Esden v. Bank of Boston, 229 F.3d 154, 169 n. 19 (2d Cir.2000) (finding that IRS notice can be “entitled to respect” because it constitutes a “body of experience and informed judgment”) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)); see also Skidmore, 323 U.S. at 140, 65 S.Ct. 161 (noting that level of deference depends upon, among other factors, “consistency with earlier and later pronouncements”); United States v. Mead Corp., 533 U.S. 218, 228, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (explaining that, under Skidmore, deference can range from “great respect at one end to near indifference at the other” (internal citation omitted)).
*625 However, even according no deference to Notice 2006-108, I agree with its interpretation of the rentals-from-real-estate exclusion. Because the term “rentals from real estate” is not defined in the Internal Revenue Code, it must be interpreted “in accordance with its ordinary or normal meaning,” Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), with the qualification that, as an exclusion from net earnings from self-employment, the rentals-from-real-estate exclusion must be narrowly construed, Wuebker, 205 F.3d at 903; Johnson v. Comm’r, 60 T.C. 829, 833 (1973). In Wuebker, the Sixth Circuit defined “rentals from real estate” as “Consideration paid ... for the use or occupancy of property.” Wuebker, 205 F.3d at 904 (alteration and omission in original) (quoting Black’s Law Dictionary 1299 (7th ed.1999) (defining “rent”)). While the court adopts a similar definition, the court concludes that the CRP payments to Morehouse compensated him both for the government’s occupancy and its use of Morehouse’s property. Ante at 621. For the reasons explained by the Sixth Circuit, I respectfully disagree. See Wuebker, 205 F.3d at 904.
Beginning with the issue of the government’s occupancy of Morehouse’s property, a handful of governmental ingresses for monitoring does not amount to “occupancy” as that term is normally understood. See Webster’s Third New International Dictionary 1561 (2002) (defining “occupy” as “to reside in as an owner or tenant”). The court, however, adopts an almost unbounded view of occupancy, even though Morehouse did not argue that the government occupied his property and even though the Wuebker court, including the dissenting judge, expressly declined to endorse such an expansive interpretation of occupancy. See Wuebker, 205 F.3d at 905 (Jones, J., dissenting) (“[T]he [government] did not possess or occupy the [taxpayers’] property in the traditional sense that gives rise to a tenant-landlord relationship.”).
Turning to whether the government “used” Morehouse’s property, the court equates the tasks required of Morehouse under the CRP contracts and the government’s compliance checks of his property with the use of Morehouse’s property by the government. Ante at 621-22. Although I agree with the Sixth Circuit that “[w]hether the CRP payments constitute consideration for the ‘use’ of [a taxpayer’s] land is a close[] question,” I also agree that “such an argument impermissibly stretches the plain meaning of the term ‘use,’ especially in light, of the narrow construction required of the rentals-from-real-estate exclusion.” Wuebker, 205 F.3d at 904; see Webster’s Third New International Dictionary 2523-24 (2002) (defining “use” as “to put into action or service”). Under the CRP, Morehouse, not the government, implemented the required work on his property.[10] In addition, Morehouse enjoyed uninterrupted and unfettered access to his property. Under these circum *626 stances, it cannot be said that Morehouse’s checklist of tasks along with the government’s sporadic entries onto his property somehow translated into “use” of More-house’s property by the government. As the Sixth Circuit recognized, “[t]he essence of the [CRP] is to prevent participants from farming the property and to require them to perform various activities in connection with the land, both at the start of the program and continuously throughout the life of the contract, with the government’s access limited to compliance inspections.” Wuebker, 205 F.3d at 904. Consequently, the CRP merely allowed the government to replace the income that Morehouse could have received from using his property for farming with income from Morehouse using his property to achieve a public benefit.
Because the CRP payments to More-house were net earnings from self-employment under § 1402(a) and were not rentals from real estate under § 1402(a)(1), I would affirm the Tax Court’s judgment. I therefore respectfully dissent.[11]

. This conclusion is fully consistent with the IRS’s recent views on this issue. See I.R.S. Notice 2006-108, 2006-2 C.B. 1118 ("Although more extensive activities are required [of the landowner or his agent] at the beginning of the [CRP] contract term than later, the obligation to perform activities extends throughout the ten-year period, giving participation in [the] CRP the continuity and regularity necessary to be considered a trade or business.”).

. As evidence that the government “used'' Morehouse’s property, the court points to the IRS's assertion from trial that the government could arrange for Morehouse's CRP requirements to be completed on his behalf. Ante at 621-22 n. 6. The court correctly acknowledges that the record is "somewhat murky” regarding whether the government actually possessed this authority. The court has identified no provision in Morehouse’s CRP contracts that granted this unilateral right to the government. Moreover, when Morehouse violated one of his CRP contracts by using part of his property as a gravel quarry, the government simply removed the property from the CRP and required Morehouse to refund the relevant CRP and cost-sharing payments, plus interest and liquidated damages.

. While I respectfully disagree with the court's reading of the rentals-from-real-estate exclusion, its rationale may come with a short shelf life due to an intervening amendment to the Internal Revenue Code. After Morehouse received the CRP payments at issue, Congress amended § 1402(a)(1) to specify that CRP payments to an individual who receives old-age and survivors insurance benefits or disability insurance benefits are rentals from real estate. See Food, Conservation, and Energy Act of 2008 ("FCEA”), Pub.L. No. 110-246, § 15301(a), 122 Stat. 1651, 2263 (2008). Although the court refers to amended § 1402(a)(1) in its discussion of the statutory background, ante at 619, this amendment is not applicable here. The amendment governs CRP payments made after December 31, 2007, FCEA § 15301(c), 122 Stat. at 2263, and neither party disputes the Tax Court's finding of fact that the government made the CRP payments at issue before that date. Consequently, whether CRP payments that the government made after December 31, 2007 or currently makes to a non-farmer qualify as rentals from real estate under amended § 1402(a)(1) is a question that the court’s decision does not resolve.