The two cases were heard together. The complainants are owners of shares of 8% cumulative preferred stock of defendant corporation of the par value of $100 each. The defendant was incorporated under the laws of this state in 1905 by certificate which provided for common stock only. The issue of preferred stock was first authorized by amendment to the certificate of incorporation filed March 22d 1922, and the issue was increased by a further amendment to said certificate filed January 2d 1925. As of January 1st, 1943, 20,250 of such shares were authorized, of which 1,903 were owned by defendant, 17,287 were owned by the public including complainants, and 1,060 were in defendant's treasury. Dividends on the preferred stock are in arrear to the extent of $112 a share.
Notice was given stockholders of a special meeting to be held May 27th, 1943, to consider and act on a plan of recapitalization and amendment to the certificate of incorporation, which plan is compulsory and if it becomes effective will accomplish the following:
Retire 1,060 shares of treasury preferred stock and 1,903 shares of preferred stock owned by defendant; change and convert the remaining 17,287 shares of preferred stock, with all dividends and arrearages thereon, by giving each of those shares a $40 principal amount 5% twelve year debenture and 14 shares of new $5 par value capital stock; change and convert each share of outstanding common stock into 2/5 share of new capital stock and thereby decrease the authorized capital stock and capital liability on the books of the company in respect to 405,000 shares of common stock without par value, from $4,050,000 to $810,000, thus creating on the books of the corporation a capital surplus of $2,609,346.95; the certificate of incorporation to be amended to provide for a total authorized capital stock of 404,018 shares of a single class, with $5 par value.
The complainants oppose the plan on the ground that it is inequitable as to them and illegal. On filing the bills of complaint the defendant was restrained by order of the court from executing and filing the proposed amendment to its *Page 273 
certificate of incorporation and from putting the proposed plan of recapitalization into effect. The meeting of stockholders was held according to notice, at which 12,816 shares of preferred stock and 308,416 shares of common stock were voted in favor of the recapitalization plan and 1,880 shares of preferred stock and 8,150 shares of common stock were voted against it. Thus although more than 75% of common stockholders voted in favor of the plan, but 74.14% of preferred stockholders in number and amount voted for it.
The questions at issue are whether the defendant has power to adopt the plan, and whether the plan is fair and equitable as it affects complainants. The defendant argues that it has such power under amendment adopted in 1921 to section 27 of the Corporation Act (P.L. 1921 ch. 233, now included in R.S. 14:11-1, subdivs.i and j). That amendatory act authorizes corporations to increase or decrease capital stock, change common stock into one or more classes of preferred stock, create one or more classes of preferred stock, change its preferred stock into one or more classes of common stock and make such other amendment as may be desired. In 1926 the Corporation Act was further amended (P.L.1926 ch. 318 § 7, now included in R.S. 14:11-1, subdiv. n) to authorize corporations to provide for funding or satisfying rights in respect to dividends in arrear by the issuance of stock therefor, "or otherwise."
The complainants purchased their stock from 1937 to early in 1943 and as owners thereof became entitled by contract with defendant to receive all dividends that had accrued thereon since the last dividend payment in 1929, as and when defendant had sufficient earnings or surplus available for payment thereof, before payment of any dividend could be made on the common stock. While under the act of 1921 defendant has power to change its preferred stock into common stock on a just basis, such power does not carry with it the right to destroy the cumulative portion of the contract held by preferred stockholders to be paid their dividend arrears now, or at some future time. Nor has the defendant power under the act of 1926 to fund or satisfy those rights of complainants as preferred stockholders in respect to dividends *Page 274 
in arrear, by issuing common stock therefor, or otherwise (even though complainants acquired their stock after the passage of the amendment of 1926), and thus wipe out a vested right in the nature of a debt owing to complainants. Allen v. FranciscoSugar Co., 92 N.J. Eq. 431; Lonsdale, c., Corp. v.International, c., Co., 101 N.J. Eq. 554; Buckley v. CubanAmerican Sugar Co., 129 N.J. Eq. 322; Keller v. Wilson Co.
(Del.), 194 Atl. Rep. 115; Johnson v. Consolidated FilmIndustries (Del.), 194 Atl. Rep. 844; affirmed,197 Atl. Rep. 489. The plan here proposed is mandatory and is therefore distinguishable from those reported cases which deal with a plan of merger or consolidation, wherein a change is proposed in preferred stock which includes the elimination of dividend arrearages thereon. In cases of merger or consolidation the terms proposed are not mandatory but preferred stockholders have the right to decline the offered terms and have their stock appraised and to receive cash in payment therefor. I conclude that the plan of recapitalization proposed by defendant is illegal and invalid as against complainants.
The principal purpose for which defendant was incorporated was to produce and deal in sugar and molasses and ever since its organization it has been engaged in that business. It is a large owner of sugar plantations, mills and other properties in Cuba, including a controlling interest in a railroad. For several years prior to 1941 its business was not profitable, apparently because of low prices received for its products, yet it has no funded debt, no bank loans and no creditors except current ones. It is not in need of new capital and the proposed plan does not seek to bring new money into the company. For the past two years its business has been good and the price now received for sugar is much higher than it has been in years. The United States government purchases practically its entire sugar crop and for the current year has agreed to purchase one-third more sugar than for the preceding year. For the year ending September 30th, 1941, the company made a net profit of $294,070.03 and for the year ending September 30th, 1942, it had a net profit of $748,292.86, an amount equal to a dividend of *Page 275 
$43.28 on its preferred stock. Figures were not available at the conclusion of the hearing of the causes to show the net profit for the fiscal year ending September 30th, 1943, but the uncontradicted testimony is that for the first ten months of that year a net profit was indicated of $633,370.71. Even if actual net profits for the entire year cannot be determined until sundry adjustments are made which cannot be ascertained until the end of the fiscal year, it seems certain that the 1943 year will end with a substantial profit in excess of the president's estimate of from $250,000 to $300,000, to which estimate must be added the amount the Cuban government will return to defendant from a deposit of at least $100,000 which it was required to make by way of insurance on sugar stocks.
In the notice to stockholders of the meeting called to act on the plan, nothing is stated of benefits to be derived by the corporation by adoption of the plan. The notice directs attention to non-payment of dividends on preferred and common stock; it states that the improvement of the company's financial condition resulting from two profitable years of business raises the question of dividends and calls for consideration of a plan which will permit early resumption of dividends and the recommendation of a plan for recapitalization which will eliminate dividend arrearages on preferred stock immediately, instead of waiting in the hope that they eventually might be paid out of earnings; it further states that if the proposed plan is approved, the management expects to recommend shortly thereafter payment of a cash dividend on new common stock. On the face of the notice it is apparent that the proposed plan is wholly for the benefit of the present common stockholders who have had no dividend since 1921 and who under present conditions cannot expect a dividend on their stock until arrearages of dividends on the preferred stock are satisfied. The president of the company and his brother own or control 29% of the common stock and the large vote of common stockholders cast in favor of the plan at the meeting of stockholders, is evidence that those stockholders so considered it.
Examination of the plan discloses that beside the intention *Page 276 
to eliminate dividend arrearages due preferred stockholders, and their right to preferential payment of future dividends of 8% out of earnings, it proposes to take away from them their preferential interest in the entire assets of the corporation; to eliminate the right they now have to have a sinking fund established out of profits for the purpose of redeeming their stock at $105 per share with accrued and accumulated dividends, and to annul the provision that defendant shall not issue bonds or other funded indebtedness without the consent of 75% of the preferred stock. For those contractual rights preferred stockholders are offered $40 debentures carrying 5% interest and a share in $5 par new common stock with holders of the present common stock, on a basis which will give to preferred stockholders 60% of such new stock and 40% thereof to present common stockholders. Thus preferred stockholders who are not now required to share in losses the defendant may sustain until after the interests of common stockholders are exhausted, will be required to stand 60% of any such loss, and those common stockholders who have no present hope of dividends will be enabled to share with the preferred stockholders immediately in dividends to be declared out of a bookkeeping capital surplus of $2,609,346.95.
The complainants further contend that the company's financial statement submitted with the notice to stockholders, showing that the company has been operating with a deficit, understates assets, is misleading and does not disclose the true financial condition of the company, and that if it were prepared on a proper bookkeeping basis it would show a surplus out of which cumulative dividends could be paid complainants and other preferred stockholders.
The defendant contends that because its accounts have been regularly audited and certified, there is every presumption that they are correct and accurate and should be so accepted by the court, and to support that contention it relies on Ballantine
v. Young, 79 N.J. Eq. 70, and other cited cases, most of which involved apportionment of dividends between life tenants and remaindermen wherein the court adopted a doctrine of necessity because of the difficulty of other proof, *Page 277 
or where the accuracy of the accounts was not questioned. Here the correctness of the accounts is seriously questioned and since it is contended by complainants that examination of the method of keeping the accounts discloses inequities in the plan of recapitalization, the court may consider and weigh the disputed question.
The defendant's balance sheet accompanying the proposed plan shows a deficit of $457,783.05. Among the assets shown are 8,116 shares of Guantanamo Railroad Co. carried as an investment at minus $310,059.94, thus decreasing the value of its assets and helping to produce the deficit. The Railroad Co. operated at a profit in 1941 and 1942 after charging off large sums for depreciation, and its balance sheet shows the book value of its stock as $69 per share, on which basis the value of defendant's stock holdings is $560,642.68. In a consolidated balance sheet of defendant and the Railroad Co. prepared by defendant's controller, he shows the defendant's aforesaid deficit and also a surplus of $560,642.68, which surplus he explains as the value of defendant's stock in the railroad. The difference between the deficit and that surplus would leave a surplus of approximately $130,000. Defendant's deficit of $457,783.05 is arrived at after $310,059.94 is set up as a reserve against defendant's investment in the Railroad Co., which reserve complainants contend is unnecessary when the value of its stock in the Railroad Co. has been written down to less than nothing. If that reserve is added to the above item of $103,000 the result would be a surplus of $413,000 above the claimed deficit. The Railroad Co. has been indebted to defendant for some years on an open account, on which it paid $100,000 in 1939, $25,000 in 1941 and $50,000 in 1942 and now it owes some $819,000; it has always paid interest on the account, and yet as against it defendant has set up a reserve of $310,059.94 (the same reserve as against its Railroad Co. stock) which comes out of profits and appears to be wholly unnecessary. For the past three years $504,000 has been charged for depreciation against expense or profits, the effect being to reduce profits and increase deficit. In addition to depreciation charged in 1942, there was amortization of defendant's cane plant of *Page 278 
$36,794.53 and for the same year defendant wrote off $732,289.18 for property fully depreciated; nevertheless that property is still in use and defendant is doing more business with it than it ever did. In 1925 it produced 346,000 bags of sugar and in 1942 it produced 338,000 bags which would indicate that its plant has not depreciated to the extent charged for depreciation. It seems to me that there has been an over-depreciation of fixed assets and that for the purpose of informing defendant's stockholders of the true value of such assets, they should have been appraised and the appraised value shown in defendant's financial statement. No such appraisal has been made since defendant's incorporation in 1905. At the rate charged for depreciation, the limit of depreciation soon would be reached to a point where profits would have to be applied to defendant's book deficit and excess of profits would go to surplus which would be available for payment on account of preferred dividend arrears. I conclude that defendant's alleged deficit is merely a bookkeeping deficit and that it really has a surplus of assets over liabilities.
The defendant will be restrained from executing and filing any amendment to its certificate of incorporation putting the proposed plan of recapitalization into effect. *Page 279