James J. BOYLE and wife, Annie Egner and husband, Catherine B. Kip and husband, Estate of Regina T. Boyle, Deceased, and Estate of John F. Boyle, Jr., Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 392-62.

United States District Court
D. New Jersey.
Aug. 10, 1964.

---

8. See: Irvin v. Dowd, 366 U.S. 717, 721, 81 S.Ct. 1639, 1641. See also: State ex rel. Ricco v. Biggs, 198 Or. 413, 255 P.2d 1055, 38 A.L.R.2d 720 (1953).

Milton, Keane & DeBona, by Joseph Keane, Jersey City, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., by Thomas F. Field, Washington, D. C., Dept. of Justice, for the Government.

WORTENDYKE, District Judge:

The Court derives its jurisdiction in this action from the provisions of 28 U.S.C. § 1346(a) (1).

The suit is for the recovery of Federal Estate taxes paid on the estate of John F. Boyle, Jr., or, in the alternative, for a refund of Federal Income taxes for the years 1955 through 1958, paid by Joseph Keane and Hudson County National Bank as Executors of the Estate of Regina T. Boyle, deceased; Annie Egner; Catherine B. Kip; and James J. Boyle, James McMahon, James Boyle and Hudson County National Bank as executors of the Estate of John F. Boyle, Jr., deceased, are the claimants for the Federal Estate tax refund. Katherine Boyle, Fred Egner and Edward Kip are joined as parties plaintiff only because they filed joint Federal Income tax returns for the years in question with their respective spouses.

There being no genuine issue as to any material fact, the plaintiffs have moved the Court for summary judgment, and the Government has moved to dismiss the amended complaint, for summary judgment and for leave to amend its answer to the amended complaint.[1]

John F. Boyle, Jr. (hereinafter testator) died on December 8, 1953, a resident of Jersey City, New Jersey, leaving a last will and testament duly admitted to probate by the Surrogate of Hudson County, by whom letters testamentary were duly issued to his appointed executors. Testator was survived by his wife, Regina Boyle, two sisters, Annie Egner and Catherine B. Kip, and a brother, James J. Boyle. Testator's will divided his estate into four equal shares among his widow, two sisters and brother. The corpus of testator's estate included stock in various corporations, including 1,250 shares of common stock of John F. Boyle Company (Boyle Company), a New Jersey corporation engaged in the manufacture of paper box board at 500 Montgomery Street, Jersey City. Those 1,250 shares constituted the entire outstanding capital stock of the Boyle Company.

Testator's widow, Regina Boyle, died January 31, 1957, and is represented in this suit by her executors.

Among the current assets of the Boyle Company at the time of testator's death, in addition to stocks in nationally-known business corporations, were 1,282 shares of cumulative preferred stock of the Hudson Dispatch Company (hereinafter Dispatch) which had been purchased by the Boyle Company in 1952 for $384,600.00. It is with this item of corporate assets *alone* that we are here concerned.

Dispatch, also a New Jersey corporation, published a newspaper and conducted a job-printing business in this State. At the time of testator's death in 1953, there were outstanding 5,000 shares of common stock and 2,481 shares of preferred stock of Dispatch, of which the Boyle Company owned 1,282 shares of the preferred, as noted above. The certificate of incorporation of Dispatch provided as follows:

"The respective holders of the Preferred stock shall be entitled to receive, *when and as declared* from the surplus or net earnings of the corporation, yearly dividends at the rate of eight per centum per annum and no more, *payable quarterly on dates to be fixed by the by-laws* of the corporation. The dividends on the Preferred Stock shall be cumulative, and shall be payable before any dividends on the Common Stock shall be paid or set apart; so that if, in any year, the dividends declared and paid upon the Preferred Stock shall not amount to eight per centum, the deficiency shall be payable before any dividends shall be thereafter paid upon or set apart for the Common Stock; provided, however, that whenever all cumulative dividends on the Preferred Stock for all previous years shall

---

1. The Government conceded, on oral argument, that, if its motion to dismiss the amended complaint or its motion for summary judgment prevailed, its motion for leave to amend its answer to the amended complaint should be denied.

have been declared and become payable, and the accrued quarterly installments for the current year shall have been declared, and the corporation shall have paid such cumulative dividends for previous years, and such accrued quarterly installments, or shall have set aside from its surplus or net profits a sum sufficient for the payment thereof, the Board of Directors may declare dividends on the Common Stock payable then or thereafter out of any remaining surplus or net profits."

\*     \*     \*     \*     \*     \*

"In the event of any liquidation or dissolution or winding up of the corporation, whether voluntary or involuntary, the holders of the Preferred Stock shall be entitled to be paid in full, both the par value of their shares and the unpaid dividends accrued thereon before any amount shall be paid to the holders of the Common Stock; \*  \*  \*." (Emphasis supplied.)

On August 21, 1952 (prior to testator's death), the Board of Directors of Dispatch adopted a resolution for the payment to "preferred stockholders of record eight dollars per share on the outstanding preferred shares of stock. This represents a part payment of accrued dividends on preferred stock." This dividend was the first which had been declared upon the preferred stock of Dispatch, no dividends having been declared or paid on that stock for approximately 25 years preceding the adoption of that resolution. However, at each quarterly meeting subsequent to that of August 21, 1952, the Board of Directors of Dispatch declared substantial dividends on the preferred stock, which were paid to the then holders of that stock. During the lifetime of testator, the dividends on the 1,282 shares of cumu-

lative preferred stock were paid to the Boyle Company, which was the owner of the stock. At the date of testator's death, the period of preferred dividends arrearage accumulation had been reduced to 20½ years, but the Boyle Company continued to receive from Dispatch, after testator's death, additional quarterly payments on account of that arrearage until the dissolution of the Boyle Company in December, 1954. That dissolution effected a distribution of the assets of the Boyle Company at that time to testator's estate, which held all of the common stock of the Boyle Company. The estate, in turn, distributed the plant and equipment owned by the Boyle Company to the four beneficiaries under testator's will, who thereafter operated the Company as a partnership, instead of as a corporation. The securities owned by the Boyle Company, including the Dispatch preferred stock which it owned, were distributed in equal shares to the beneficiaries under testator's will.[2]

For purposes of the Federal Estate tax return, testator's executors employed a Certified Public Accountant to determine a value for the Boyle Company stock as of December 8, 1953, the date of testator's death. Because that stock was closely held, the accountant computed its value at the book value of the assets of the Company, without, however, taking into account the effect of the earning power of the operating assets of the Company upon their fair market value. The accountant's recommendation respecting the valuation of the Boyle Company stock in testator's estate was adopted by his executors. In computing the market value of the Dispatch stock, to be reflected in his valuation of the Boyle Company stock, the accountant took the sum of the par value ($128,200.00) and 20½ years of accumulated dividends ($210,248.00), or an aggregate of $338,-

2.  Pursuant to authorization by the Commissioner of Internal Revenue the John F. Boyle Company was liquidated, and its assets turned over to testator's executors in exchange for all of the company's issued stock which constituted the main asset of the estate. Most of the remaining assets of the estate, including the preferred stock of Dispatch, were distributed in kind to the four beneficiaries named in testator's will.

448.00. This figure represented the total purchase price of $384,600.00 ($128,200.00 par value and $256,400 representing 25 years of accumulated but unpaid dividends) paid by the Boyle Company for the Dispatch stock, as adjusted by the 4½ years of dividend arrearages which had been paid to the Company subsequent to its acquisition of the stock but prior to the testator's death. This valuation figure for the Dispatch stock was accepted by the Commissioner of Internal Revenue as the basis for the assessment of the Estate tax upon testator's estate. The Estate tax return was filed February 18, 1955; the taxes shown due were paid March 14, 1955; and a minor deficiency was thereafter assessed and paid on January 6, 1956. It was not until October 23, 1961, more than five and a half years after the final payment of Federal Estate taxes, and more than six and a half years after the filing of the Estate tax return, that testator's executors filed a claim for refund of Federal Estate taxes under 26 U.S.C. § 6532 (I.R.C.1954). The claim was rejected because not filed within the three-year period of limitations prescribed by Section 910 of the Internal Revenue Code of 1939. That the claim is barred by that section is conceded by the parties.

After the assets of the Boyle Company had been turned over to the Boyle Estate and, in 1955, by the executors to the beneficiaries under the testator's will, the Board of Directors of Dispatch continued to declare dividends on the Dispatch preferred stock, and the individual plaintiffs reported the receipt of these dividends in their respective income tax returns for the year of receipt. These distributees claimed that such receipts were non-taxable to them as income, because they had been reflected in the valuation of the stock for Estate tax purposes. On audit of the Income tax returns of these individuals, the Commissioner assessed deficiencies upon the ground that *all* dividends received by them from Dispatch, in the period 1955/1958 inclusive, constituted taxable income to the individual plaintiffs for the respective years in which received. Payment of the assessed deficiencies was made, and timely claims for refund were filed (on May 10, 1961). Upon rejection of these claims for refund, this action was timely instituted by the individual Income taxpayers. The disallowance of these refund claims was based upon the grounds that (1) the preferred stock dividend arrears annually received by the plaintiff Income taxpayers were taxable dividends, and did not constitute a distribution of the corpus of testator's estate; (2) the payments did not come within the purview of Section 691(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 691(a) as "income in respect of decedent"; (3) the payments did not come within the purview of Sections 1311 to 1315 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 1311–1315, dealing with correction of error in Federal tax determinations.

At the time of testator's death, *he* owned *no* Dispatch stock. The 1,282 shares of Dispatch preferred stock were owned by the Boyle Company, all of the stock of which the testator owned. Moreover, the Boyle Company, on the date of testator's death, neither owned nor had any right to the 20½ years of then unpaid cumulative dividends on Dispatch preferred stock because the Board of Directors of Dispatch had not declared any such dividends, nor committed itself to do so. The Internal Revenue Code of 1954, 26 U.S.C. § 316 defines "dividend" as "any distribution of property made by a corporation to its shareholders * * out of its earnings and profits accumulated after February 28, 1913, or * * * out of its earnings and profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution was made." See Avery v. C.I.R., 1934, 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216; Tar Products Corp. v. Commissioner of Internal Revenue, 3 Cir.1942, 130 F.2d 866, 143 A.L.R. 593; C.I.R. v. American Light & Traction Co., 7 Cir.1946, 156 F.2d 398,

167 A.L.R. 300.[3] The Supreme Court, in Estate of Putnam v. Commissioner, 1945, 324 U.S. 393, at p. 400, 65 S.Ct. 811, at p. 814–815, 89 L.Ed. 1023, had this to say, respecting a stockholder's interest in stock earnings:

"[S]tock does not earn an identifiable separate taxable share of corporate profits for its owner before the corporation makes those profits available to the stockholder. It is not the earnings of a corporation but the separation of those earnings by a completed dividend which assigns a part of those earnings to a stockholder. The price a stockholder would receive on a stock sale after declaration and before the record date would reflect corporate earnings but would not reflect the declaration or non-declaration of a dividend. As the same value would be in the stock with or without the declaration, the price would be the same. Only an ex-dividend sale would affect price."

■ In the case at bar, there had been no declaration, as of the date of testator's death, of any of the 20½ years' arrearages of accumulated dividends on the Dispatch preferred stock, nor any record date for payment of any such dividend. "The rights represented by accumulations of preferred dividends are rights to share in future earnings of the corporation in preference to common stock; * * *." Skenandoa Rayon Corp. v. C.I.R., 2 Cir.1941, 122 F.2d 268, 270, cert. den. 314 U.S. 696, 62 S.Ct. 413, 86 L.Ed. 556. Citing Wessel v. Guantanamo Sugar Co., Ch.Div.1944, 134 N.J.Eq. 271, 35 A.2d 215, plaintiffs contend that preferred stockholders become entitled, by contract with the corporation, to receive all accrued dividends on the preferred stock "as and when defendant had sufficient earnings or surplus available for payment thereof, before payment of any dividend could be made on the common stock." Such is elementary corporation law. The cited case involved the determination of the legality of a plan of recapitalization and amendment to the certificate of incorporation contemplated for presentation to a special stockholders' meeting. The bill was for an injunction, brought by owners of shares of 8% cumulative preferred stock of the corporation of the par value of $100 per share, to prevent the adoption and implementation of the plan. The plan involved the retirement of shares of treasury preferred stock and preferred stock owned by the corporation and conversion of the remaining shares of preferred, with all dividends and arrearages thereon, by allocating a $40.00 principal amount 5%–12-year debenture and 14 shares of a new $5.00 par capital stock for each of the shares of preferred stock, and decreasing the authorized capital stock, to create a capital surplus. The Court held that the statutory power to change preferred stock into common stock on a just basis did not carry with it the right to destroy the cumulative portion of the contract held by preferred stockholders to be paid their dividend arrears forthwith or in the future. The case is inapposite here.

■ The Dispatch preferred stock owned by the Boyle Company vested contract rights in the Company under the certificate of incorporation of Dispatch. Those contract rights were properly reflected in the valuation of that stock for all purposes. But the unpaid accumulated dividend arrearages on the Dispatch stock were not themselves an asset of the estate, as accrued interest would be, and their value to the estate was reflected in the value of the stock itself. None of the preferred stock dividends received by the beneficiaries after 1955 constituted a distribution from corpus of testator's estate, but they were declared and paid by the directors of Dispatch on the shares of its preferred stock which had been distributed in the corporate dissolution to the beneficiaries under the will. When the distributees of those as-

---

3. In Tar Products the Court held that a dividend to a corporate stockholder "is taxable in the year of its receipt, not the year of its declaration."

sets received payments on account of dividend arrearages thereon, those dividends became income to the recipients subject to income tax. 26 U.S.C. § 102.

■ It is the further contention of the plaintiff Income taxpayers that the dividends received by them during the critical years constituted "income in respect of a decedent" within the provisions of Section 1.691(a)-1 of the Treasury Regulations (26 C.F.R. Sec. 1.691(a)-1) interpreting section 691 of the Internal Revenue Code of 1954. That section of the Regulations defines "income in respect of a decedent" as "those amounts to which a decedent was entitled as gross income, but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death or for a previous taxable year in the method of accounting employed by the decedent." None of the preferred dividends declared and *paid after testator's death* to the individual Income taxpayers constituted any portion of testator's gross income for the reason that they were neither declared nor paid during his lifetime nor during any ownership by him of the shares of preferred stock upon which they were subsequently declared and paid. No preferred dividends upon the Dispatch stock were received by testator in his lifetime because he was not the owner of the generating stock. Such payments as were made on account of the accumulated dividend arrearages to the distributees of the assets of the Boyle Company in dissolution were income to those payees, not receivables of the testator. They were not income in respect of the decedent. See O'Daniel's Estate v. C.I.R., 2 Cir.1949, 173 F.2d 966.

Plaintiff Income taxpayers invoke the doctrine of equitable recoupment in support of their respective claims for income taxes allegedly overpaid. They rely upon Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 for support of their claims. That case affords no such support because it is distinguishable from that before us. As was pointed out in Rothensies v. Electric Storage Battery Co., 1946, 329 U.S. 296, 299, 67 S.Ct. 271, 272–273, 91 L.Ed. 296, "The essence of the doctrine of recoupment is stated in the Bull case; 'Recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.' 295 U.S. 247, 262, 55 S.Ct. 700, 79 L.Ed. 1421. It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole. * * * In both cases [Bull, supra, and Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, also here relied upon by plaintiffs] a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due. In Bull v. United States, the one taxable event was receipt by executors of a sum of money. An effort was made to tax it twice—once under the Income Tax Act as income to the estate after decedent's death and once under the Estate Tax Act as part of decedent's gross estate. This Court held that the amount of the tax collected on a wrong theory should be allowed in recoupment against an assessment under the correct theory. In Stone v. White, likewise, both the claim and recoupment involved a single taxable event, which was receipt by an estate of income for a period. The trustees had paid the income tax on it but this Court held it was taxable to the beneficiary. Assessment against the beneficiary had meanwhile become barred. Then the trustees sued for a refund, which would inure to the beneficiary. The Court treated the transaction as a whole and allowed recoupment of the tax which the beneficiary should have paid against the tax the Government should not have collected from the trustees."

The distinguishing features of the case at bar are obvious. In the present case there were two distinct unrelated transactions creating tax liability under two separate and distinct statutes. Neither of the two transactions or taxable events has been subjected to two taxes on inconsistent legal theories. The accumulated arrearages of undeclared and unpaid dividends on the preferred stock of Dispatch were properly considered in appraising the value of the Boyle Company stock. See Maass v. Higgins, 1941, 312 U.S. 443, 448, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035. The Boyle Company stock was an asset of testator's estate. The Estate tax assessed and paid on the estate attached to the estate as a whole, and did not include a tax on the right of the beneficiaries. New York Trust Co. v. Eisner, 1921, 256 U.S. 345, 349, 41 S.Ct. 506, .65 L.Ed. 963, 16 A.L.R. 660. No right to receive any dividend payment on the Dispatch preferred stock had accrued to or become part of the gross estate of the testator. The impact of the Estate tax did not fall upon the dividend payments subsequently received by the beneficiaries under the will. Such payments were properly subject to Income tax for the tax year in which received. What was paid in each instance was correctly due and not mistakenly paid. No specific single asset has been taxed twice. Bull and Stone rest upon their particular facts. They are inapposite here.

"Claims for refund, however prosecuted, depend upon proving that the Treasury is retaining money which in justice belongs to the claimant, * * *." Helvering v. Schine Chain Theaters, 2 Cir. 1941, 121 F.2d 948, 950; citing Lewis v. Reynolds, 1932, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Stearns Co. of Boston, Mass., v. United States, 1934, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647; Stone v. White, 1937, 301 U.S. 532, 57 S.Ct. 851. The uncontradicted evidence in the case at bar fails to disclose that "the Treasury is retaining money [the Boyle Estate tax] which in justice belongs to the claimant" distributees of a stock asset of the estate upon which dividends were declared, paid and received after testator's death. No error, in respect of either the Estate tax or the Income taxes, has been shown which would warrant readjustment pursuant to §§ 1311–1315 of the Internal Revenue Code of 1954. See C.I.R. v. Weinreich's Estate, 9 Cir.1963, 316 F.2d 97.

The Government's motion to dismiss the amended complaint filed by the Estate of John F. Boyle, Jr. in this action, and so much of the amended complaint filed by the remaining taxpayers as prays for a refund of Federal Estate taxes, for lack of jurisdiction in this Court to entertain the same, is granted.

The Government's motion for summary judgment in its favor upon the amended complaint is granted.

The Government's motion for leave to file an amended answer to the amended complaint is waived.

Plaintiffs' motion for summary judgment in their favor against the defendant upon the amended complaint is denied.

Counsel for the Government is directed to submit draft of order not inconsistent with the views herein expressed.