355 F.2d 233
 James J. BOYLE and Katherine Boyle, His Wife, Annie Egner and Fred Egner, Her Husband, Catherine B. Kip and Edward Kip, Her Husband, Joseph Keane and Hudson County National Bank, Executors of the Estate of Regina T. Boyle, Deceased, James McMahon, James Boyle and Hudson County National Bank, Executors of the Estate of John F. Boyle, Jr., Deceased, Appellants,
v.
UNITED STATES of America.
 No. 15118.
 United States Court of Appeals Third Circuit.
 Argued April 23, 1965.
 Decided December 29, 1965.
 Rehearing Denied February 3, 1966.
 
 Joseph Keane, Jersey City, N. J., Richard B. Nashel, Newark, N. J. (Milton, Keane & De Bona, Jersey City, N. J., on the brief), for appellants.
 Jonathan S. Cohen, Atty., Dept. of Justice, Tax Div., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., David M. Satz, Jr., U. S. Atty., Martin Tuman, Asst. U. S. Atty., on the brief), for appellee.
 Before McLAUGHLIN, STALEY and SMITH, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 Briefly stated, the problem involved is whether or not appellant taxpayers are within the purview of 26 U.S.C. § 691, so as to be entitled to a deduction for estate taxes paid on certain accumulated dividend arrearages which are being declared and paid to taxpayers causing them to become liable for income taxes thereon; or in the alternative does the doctrine of Equitable Recoupment, as set forth in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) apply to this particular situation.
 
 
 2
 John F. Boyle died on December 8, 1953, leaving his entire estate in equal shares to his widow, a brother, and two sisters. The largest single asset of the decedent's estate consisted of 1,250 shares of stock in the John F. Boyle Co. (Boyle Co.). The decedent, at the time of his death and at all times prior thereto, was the sole shareholder of the Boyle Co. When the certified public accountant, hired by the estate, examined the assets of the Boyle Co. in order to place a value on its stock, he came upon 1,282 shares of 8% cumulative preferred stock in the Hudson Dispatch held by the Boyle Co. His investigation revealed that the stock had an accumulation of twenty-five years of undeclared dividends but that as of August 21, 1952 the Board of Directors of the Dispatch had declared certain dividends on the stock reducing the arrearage to 20 ½ years. To arrive at what this meant to the estate for tax purposes, the accountant simply added the 20 ½ year arrearage amounting to $210,248.00 to the par value of the stock which was $128,200.00 and placed a value of $338,448.00 on the shares. This asset in turn was included, at that figure, in the value of the Boyle Co. stock and on that basis the estate tax was paid by the Boyle estate. In 1954, the Boyle executors dissolved the Boyle corporation and distributed its assets, including the Dispatch stock, among the four beneficiaries under the will.
 
 
 3
 Thereafter, the distributees received the dividends as paid by the Dispatch. Each year they declared the receipt of the dividends in their income tax reports, listing them as non-taxable. This was done for the years of 1955 through 1958. On July 30, 1958 appellants received notices of deficiency due to their exclusion of the dividends from their taxable income. This was the first occasion the individual appellants or the executors of the estate had any hint that the arrearage on the Dispatch stock would be included in the gross income of the beneficiaries. By then the three year statute of limitations had barred any action to obtain a refund for overpayment of estate taxes. (26 U.S.C. § 6511). So, the appellants paid the deficiency and sued for a refund in the district court where summary judgment was granted against them.
 
 The applicability of § 691
 
 4
 It is evident that § 691 does not pertain to the dividend arrearage. This is so because § 691 deals with "income in respect of a decedent". The Treasury Regulations on income tax state by way of definition of the above term: "In general, the term `income in respect of a decedent' refers to those amounts to which a decedent was entitled as gross income but which were not properly includible in computing his taxable income for the taxable year ending with the date of his death, or for a previous taxable year under the method of accounting employed by the decedent." Treas.Reg. § 1.691 (a) — (1) (b) (1954). That leads to the query of whether or not there was a "right to income" in the decedent at the time of his death.
 
 
 5
 Assuming, arguendo, that the arrearage was a "right to income", this does not aid the appellants' contention because the right to income was in the Boyle Co. and not the decedent. The law is settled that the stockholder and the corporation are two separate and distinct entities. First National Bank of Boston v. State of Maine, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401 (1932); Klein v. Board of Tax Supers., 282 U.S. 19, 51 S.Ct. 15, 75 L.Ed. 140, 73 A.L.R. 679 (1930); White v. Evans, 117 N.J.Eq. 1, 174 A. 731 (1934); Hackensack Trust Co. v. City of Hackensack, 116 N.J.L. 343, 184 A. 408 (Sup.Ct.1936). Nor is there reason to believe that the decedent, himself, did not respect the corporate form. After all, the decedent is the one who sold the Dispatch stock to the Boyle Co. in 1952 for $384,600. In view of this appellant taxpayers can hardy claim that there was a right to income in the decedent, John F. Boyle, since he divested himself of it one year before his death.
 
 
 Equitable Recoupment
 
 
 6
 With respect to the doctrine of equitable recoupment as set forth in the landmark decision of Bull v. United States, supra, appellants find themselves on solid ground. Bull concerned facts quite similar to those at bar. In Bull a specific fund was treated first as part of the corpus of the decedent's estate and then as income to the estate and was therefore subjected to an estate tax and an income tax. In the Boyle audit the dividend arrearage by being added to the par value of the stock in effect became part of the corpus of the estate. It increased the value of the estate by the value of the Boyle Co. stock which in turn raised the amount of the estate tax. The same sum, when the dividends were declared, was treated as income to the recipients who were the beneficiaries under Mr. Boyle's will.
 
 
 7
 So we have the type of double taxation as existed in the Bull claim, namely, a specific fund being treated as corpus and as income. The heart of Bull is that it would be unequitable to permit the Government to levy an estate tax on a designated fund and subsequently an income tax on that sum in the hands of the estate without granting a credit for the estate taxes paid, even though the statute of limitations stands as a bar to a suit for refund.
 
 
 8
 The decision of the Supreme Court in Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937) lends further firm support to appellants' position. There the doctrine of "Equitable Recoupment" was invoked in favor of the Government. The trustee paid certain income taxes on trust income which should have been taxed to the beneficiary. At the time the trustee sued for a refund, the Government, because the statute of limitations had run against it, was unable to bring an action against the beneficiary for the tax that was due on the contested trust income. Speaking of this the Supreme Court said at 301 U.S. 537, 57 S.Ct. 853, 854: "To avoid this circuity of action a court of equity takes cognizance of the identity in interest of trustee and cestui que trust. Likewise here, the fact that the petitioners and their beneficiary must be regarded as distinct legal entities for purposes of the assessment and collection of taxes does not deprive the court of its equity powers or alter the equitable principles which govern the type of action which petitioners have chosen for the assertion of their claim." The quoted language fairly expresses the spirit of both the Stone and Bull opinions, namely, that the federal courts may and should exercise their equity powers in circumstances comparable to those in this appeal. It is to be specially stressed that the manner in which the Supreme Court dealt with the "trustee — cestui que trust" relationship in Stone v. White, supra, in effect bridges whatever factual gap there might be between Bull v. United States and this cause. In Bull it was the estate which paid both the estate and income taxes. The Boyle estate paid the estate tax and the income tax is being paid by the beneficiaries of that estate. Aside from nomenclature, there is no substantial practical difference as far as the governing tax principle is concerned between the trustee and cestui in Stone and the Boyle estate and its beneficiaries.
 
 
 9
 The district court in granting summary judgment to the Government attempted to distinguish Bull and Stone by holding that the tax payments on the Boyle dividend arrearage were not "* * * the single transaction or taxable event * * *." Boyle v. United States, 232 F.Supp. 543, 549 (D.C.D. N.J.). It seems to us that the assumption of that sort of technical construction to defeat appellants' claim is utterly unwarranted by the admitted facts. Bull and Stone dealt with a definite fund. The fund in this action, the 20 ½ year arrearage, is just as definite. It was clearly treated in that category by the Government including it in the value of the Dispatch stock for estate tax purposes. After that the identical fund was taxed as income to appellants when they received their dividends. The net result has been double taxation of the single tax item by assessing it first under the estate tax and thereafter for income taxes. To permit this to stand would be to go substantially contrary to the high level tax doctrine pronounced by Mr. Justice Roberts in the Bull opinion, supra, 295 U.S. p. 261, 155 S.Ct. p. 700: "While here the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights." The district court in stating that "No specific single asset has been taxed twice. * * *" (Boyle v. United States, supra, 232 F.Supp. at p. 550), overlooks the undisputed evidence that if the arrearage on the Dispatch stock had not been added to the par value of the stock, the estate tax would necessarily have been much less.
 
 
 10
 Appellee in contesting equitable recoupment relies heavily on Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946). There the Supreme Court refused to apply the doctrine in aid of a taxpayer who had waited over twenty years to seek a refund. We have no real contention of laches in this cause. That element was of great weight in Electric Storage Battery. Even so, the district and circuit courts held Bull applicable, as did three dissenting Justices in the Supreme Court. However, that of itself is of no special interest in the instant appeal. What is more important is that our facts are much closer to those in Bull than were the Electric Storage circumstances and each refund claim must be judged on its own facts. The Government is retaining taxpayers' money over and above the just debt of the taxes. We think that in this suit the taxpayers are pursuing a proper, available remedy to obtain restitution of that balance.
 
 
 11
 Appellants' patently unfortunate predicament arose initially from the forth-right immediate inclusion of the stock dividend arrearage in the estate tax return. It was made complete when the individual beneficiaries, who had been unintentionally lulled to inaction, found themselves barred by the statute of limitations from pursuing their right to obtain a refund for overpayment of estate taxes. Appellants' conduct has been undeniably exemplary, actually overanxious in rushing in and paying what again is conceded to have been at least full taxes on the dividend arrearage. In consequence of that and the statute of limitations running on the estate's opportunity to litigate its payment of estate taxes, the Government is in possession of money which natural justice and equity indicate should be refunded. We are very clear that, in the posture of all the facts, appellants should not be deprived of their property, on the sole grounds that they paid the tax for the estate too quickly and later did not move quickly enough in seeking to avoid paying those taxes twice. Appellee's stand in support of the double tax is not in vindication of a basic principle that should be rigidly enforced. It is insistence on form over substance, though remedial justice is readily available within the Bull rule. As in the latter litigation, there has been no persuasive reason advanced why appellants with their sound cause of action should be forced to make an application to the Congress in order to obtain relief.
 
 
 12
 The judgment of the district court will be reversed and the cause remanded for the entry of judgment in favor of the appellants in an amount to be determined by the district court after any further poceedings that may be necessary to arrive at same.
 
 ON PETITION FOR REHEARING
 
 13
 Before KALODNER, Chief Judge, and McLAUGHLIN, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.
 
 
 14
 PER CURIAM.
 
 
 15
 The petition for rehearing in this tax case appeal is completely based on McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 and Section 6514 of the 1954 Code. We did not deal with McEachern in the court opinion because it concerns a situation substantially differing from that in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421. This would seem to be conceded in McEachern as it makes no reference whatsoever to Bull.
 
 
 16
 In Bull a taxpayer sought to recoup a barred overpayment of estate taxes against a subsequent income tax on the same sum with all the equities in his favor. McEachern involved an attempt by the government to set off a barred deficiency against a timely suit for refund. There the government was barred by a statute of limitations which prevented collecting a deficiency for 1928 at the time when taxpayer was suing for a refund for overpayment for the years 1929, 1930 and 1931. The court refused to permit the government to invoke the doctrine of Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, because there, "Equitable considerations not within the reach of the statutes denied a recovery." McEachern, supra, 302 U.S. p. 63, 58 S.Ct. p. 87. Also, the government in McEachern endeavored to impose an estoppel upon the taxpayer to prevent him from raising the defense of the statute of limitations as to the deficiency for 1928. The court held that § 609 of the 1928 Revenue Act precluded this.
 
 
 17
 Regarding Section 6514 it need only be noted that the court in Bull held that the predecessors of § 607 and § 609 of the 1928 Revenue Act, i.e. § 1012 of the Revenue Act of 1924 and § 1112 of the 1926 Act would not preclude the court from granting equitable recoupment. Speaking of the recoupment theory, the court stated, "Such a defense is never barred by the statute of limitations so long as the main action itself is timely." Bull, supra, 295 U.S. p. 262, 55 S.Ct. p. 700. The above cited sections of the Revenue Acts of 1924 and 1926 are the predecessors of Section 6514 of the 1954 Internal Revenue Code.
 
 
 18
 Petitioner urges that in the Bull suit, the statute of limitations had not run so as to bar a claim for refund on the tax originally asserted and paid, at the time that the deficiency for the second tax was asserted. In connection with this it must be pointed out that at the time the deficiency for the second tax was asserted, the statute of limitations on the suit for refund of the estate taxes had one month to go. It was paid in August of 1921 and the assessment for the income tax deficiency was not asserted by the Commissioner until July of 1925. At the time, pursuant to Section 1012 of the 1924 Revenue Act, the statute of limitations on a suit for refund was four years. The Board of Tax Appeals did not tell the taxpayer until April 9, 1928 that the sum in question was to be considered both corpus and income to the estate. By then it was too late for the taxpayer to sue for a refund of the estate tax. Bull, supra, p. 258, 55 S.Ct. p. 699. In the present appeal the petitioner waited about seven months after the statute of limitations had run (which time lapse of itself barred a suit for refund of estate taxes by the estate) before it asserted the income tax deficiency. Such assertion made then could have been and has been used in an effort to circumvent the possibility of the taxpayer invoking the Bull doctrine. That tactic cannot aid the government in this instance because it was not the issue upon which the Bull opinion turned. Actually the Court in Bull, supra, at p. 259, 55 S.Ct. p. 699, states that there was no tolling of the statute of limitations; that the taxpayer's relief was to be found elsewhere, i.e. in equitable recoupment. The statute of limitations had barred a suit for refund of the estate taxes at the time the taxpayer sued for a refund of the income tax and obtained it by way of a recoupment of the estate tax.
 
 
 19
 Our opinion, soundly based upon the Bull case, properly prevents the unjust double taxation that is the palpable result of the unwarranted refusal of petitioner to recognize and accept taxpayer's true predicament.
 
 
 20
 The petition for rehearing will be denied.
 
 
 21
 FREEDMAN, Circuit Judge, dissents from the denial of the petition for rehearing.